UNITED STATES of America, Plaintiff–Appellee,

v.

John Addison BALLIS, Defendant–Appellant.

No. 93–2145.

United States Court of Appeals, Fifth Circuit.

Aug. 8, 1994.

Gerald H. Goldstein, John J. Fahle, Goldstein, Goldstein & Hilley, San Antonio, TX, for appellant.

Katherine L. Haden, Paula C. Offenhauser, Asst. U.S. Attys., Ronald G. Woods, U.S. Atty., Houston, TX, for appellant.

Before KING and SMITH, Circuit Judges, and KENT,[1] District Judge.

SAMUEL B. KENT, District Judge:

John Ballis appeals his conviction on six counts of bank fraud and conspiracy to defraud and four counts of obstructing the investigation of that fraud. Ballis asserts that the district court erred in (1) excluding certain evidence of his discussions with federal agents pursuant to a prior plea agreement; (2) refusing to sever the fraud counts from the obstruction counts; and (3) refusing to enforce the plea agreement. We affirm in part, and reverse in part.

## I. BACKGROUND

In late 1986, the FBI began an investigation of transactions involving Roy Dailey, the Chief Executive Officer and Chairman of the Board at First Savings Association of East Texas ("FSAET"), a federally insured savings institution in Houston, Texas. In the course of the investigation, FBI Special Agent Tim Lauzon began focusing on FSAET loans to Ballis or persons affiliated with Ballis. The investigation revealed that from March to December 1984 Ballis and Dailey had arranged for FSAET to lend approximately $21.3 million to nominee borrowers acting on Ballis's behalf. To support these loans, Ballis and Dailey had submitted financial statements which falsely inflated the value of collateral and the ability of the nominees to service the loans. The loans were never repaid and resulted in foreclosures.

In particular, Agent Lauzon discovered that in December 1984 Ballis had asked Dai-

---

1. District Judge of the Southern District of Texas, sitting by designation.

ley to arrange for FSAET to loan $4.1 million to Archie Wood, Ballis' ranch foreman, for the purchase of raw land from M.F. Developers, a shell corporation created by Ballis and one Lance Winchester. In return, Dailey asked Ballis to pay him a portion of the loan proceeds. FSAET made the loan on December 27, 1984, from which Ballis paid the underlying debt on the property and still had $1,821,092.64 left over.

Ballis deposited the excess at First State Bank of Liberty, Texas ("FSBL") on December 28, 1984. That afternoon, he instructed Suzanne Fairchild, vice president at FSBL, to withdraw $300,000 in cash from the $1.8 million deposit and deliver it to one John Adger. Adger then delivered the money to Dailey. From the remaining loan proceeds, Fairchild made a number of additional disbursements to Ballis, Wood, and Winchester, some of which ended up in Dailey's hands.

Eventually, the investigation led to a grand jury subpoena for Fairchild. Prior to her appearance, however, Ballis met with Fairchild and instructed her not to provide any documents to the grand jury that would show that he had paid money to Dailey from the Wood loan proceeds. Fairchild complied, providing copies of falsified and fictitious documents to the grand jury in May 1987 and May 1988, after showing the documents to Ballis and receiving his approval for their submission. Among other misdeeds, Fairchild created a fictitious certificate of deposit for $305,000 and fictitious documents making it appear that loan proceeds had been reinvested, rather than paid to Dailey. She also furnished altered copies of Ballis's bank statements which omitted his certificate of deposit activity.

From the FSBL records Fairchild submitted to the grand jury, the government could not find any cash withdrawals from the disbursement of the $1.8 million deposit which would have indicated a bribery payment from Ballis to Dailey. Thus, while investigators could establish that Dailey received large amounts of cash shortly after the Wood loan, they could not determine the source. Subsequently, Ballis's attorney, Thomas Royce, told investigators that a bribe to Dailey could not be established without Ballis's cooperation and testimony.

On July 13, 1988, the government entered an agreement with Ballis, wherein Ballis agreed to give the government complete and truthful information about all participants and events involving the suspect loans and Roy Dailey. In return, Ballis would plead guilty to a criminal information charging only one count of making a false statement to a financial institution in violation of 18 U.S.C. § 1014.

Pursuant to this agreement, FBI Agents Tim Lauzon and Randy Durney and AUSA Mitchell Lansden interviewed Ballis on July 27 and 28. These agents asked Ballis to explain the events surrounding the loan to Archie Wood, including the method, source and total amount of payment to Dailey for making the loan to Wood. During the interviews, Ballis stated that, consistent with the falsified documents Fairchild had furnished to the grand jury, the $300,000 payment to Dailey was made by cashing in a $305,000 certificate of deposit. In fact, this certificate had been manufactured after the cash had been shipped to Dailey directly from the $1.8 million excess loan proceeds. Moreover, in this meeting Ballis did not mention his conspiracy with Fairchild to provide false and fictitious documents to the grand jury, or the additional $200,000 he had later paid Dailey from the excess loan proceeds.

On January 2, 1990, Ballis pled guilty to a criminal information pursuant to his written agreement with the government. The information charged Ballis with submitting a false invoice to FSAET to obtain an advance on a construction loan. Judge Lynn Hughes of the Southern District of Texas sentenced Ballis to two years' probation.

In April, 1990, agent Durney reviewed the contents of a safe deposit box that had been drilled open by the Federal Deposit Insurance Corporation. He found the original $305,000 certificate of deposit of which Fairchild had provided a copy to the grand jury, and discovered that the certificate was the product of a "cut and tape job." Durney later examined the contents of another safe deposit box that had been drilled open and found microfiche copies of Ballis's bank state-

ments, which also had been provided to the grand jury. He found that the bank statements had been folded over and taped to conceal the certificate of deposit activity on Ballis's accounts.

Fairchild became the target of a federal grand jury investigation in August 1990. She subsequently entered into a proffer agreement with the government, and told investigators that Ballis had been untruthful in the debriefings by concealing the additional bribe to Dailey and his ongoing conspiracy with Fairchild to obstruct the federal grand jury investigation and Dailey's trial.

A ten-count indictment issued against Ballis on March 27, 1992, charging him with conspiracy to commit offenses against a savings and loan in violation of 18 U.S.C. § 371 (count one); conspiracy to obstruct justice and make false statements to federal agents in violation of 18 U.S.C. § 371 (count seven); and aiding and abetting the following offenses: bank fraud in violation of 18 U.S.C. § 1344 (count two), bribing a savings and loan officer in violation of 18 U.S.C. § 215 (count three), receiving a benefit in connection with a loan in violation of 18 U.S.C. § 1006 (count four), misapplication of the funds of a savings and loan in violation of § 657 (count five), making false entries in the books and records of a savings and loan in violation of 18 U.S.C. § 1006 (count six), obstruction of justice in violation of 18 U.S.C. § 1503 (counts eight and ten), and making a false statement to a federal agent in violation of 18 U.S.C. § 1001 (count nine).

A jury found Ballis guilty of all ten counts, and the court sentenced him to concurrent terms of five years' imprisonment on counts 1, 2, and 3; concurrent terms of five years' imprisonment on counts 4, 5, and 6, to run consecutively to counts 1 through 3; concurrent terms of 30 months' imprisonment on counts 7, 8, 9, and 10, to run consecutively to counts 1 through 6; concurrent terms of three years' supervised release on counts 7 through 10; a $500,000 fine; $4,260,000 in restitution; and a $50 special assessment.

## II. EVIDENTIARY RULINGS

Ballis first challenges various evidentiary rulings made by the trial court, complaining that the court erroneously prevented him from adducing any defense testimony as to the events of July 27 and 28, 1988, when Ballis met with federal agents for debriefing in accordance with the terms of his plea agreement. The record supports this contention. Because two counts of the indictment specifically charged Ballis with criminal conduct during those meetings, we find that the trial court's exclusion of the defense version of those meetings mandates reversal of Ballis' convictions on those counts.

### A. THE EXCLUDED EVIDENCE

Evidence about the meetings of July 27 and 28, 1988, related only to counts seven and nine of the indictment. Count nine charged Ballis with making a false statement to a federal official on those dates, in violation of 18 U.S.C. § 1001. Count seven charged Ballis with participating in a conspiracy to obstruct justice and to make false statements to federal officials. This count described fifteen overt acts in furtherance of the conspiracy, the eleventh of which was the conduct charged in count nine. In its case-in-chief, the government presented evidence tending to prove that Ballis told the agents at these meetings that he would fully disclose what he knew about illegal activities at the bank, but that instead he purposefully withheld information about certain illegal kickbacks and the subsequent coverup of those transactions.

To substantively counter these charges, Ballis needed to present evidence that the events of July 27 and 28 were different from those described by government witnesses; that is, that Ballis either did not speak as accused, or that he had a non-culpatory reason for withholding information. Specifically, Ballis contended that any omissions in his statements at the debriefings resulted from the conduct of his interrogators rather than from a conscious attempt at obfuscation by himself. At trial, however, the court excluded virtually *all* defense testimony of witnesses to those meetings as to what they actually observed. Rather, before Ballis even began to present his case, the court stated:

THE COURT: I am not going to permit [the lawyers] to ... testify about what they heard and what they saw during the course of those meetings. It is not relevant to any proceeding....

MR. HAYNES [ (defense counsel) ]: What I had in mind, Judge, ... was that [Ballis's former attorney] Mr. Royce could speak to the subject matter of the July 27 and 28, 1988 debriefing....

THE COURT: Mr. Haynes, there will be, as far as I am concerned, little or no hearsay presented through these witnesses.... I'm not going to permit lawyers to come in and talk about what happened behind the scene.

MR. HAYNES: I am not going to go behind the scene, Judge. I'm only going to address—my plan was only to address the meetings where the witness [government agent] Lauzon who had previously testified he—

THE COURT: That is hearsay....

MR. HAYNES: Yes, but they testified about that meeting. Now I have a chance—

THE COURT: But you asked them about those.... It is not relevant what they heard him say or any witness say. That would be hearsay. Now, they can tell us what they said. But that is all they can say is what they said during those meetings.... They can't tell us what they heard him ask. They can't tell us what they heard [agent] Mitch Lansden ask. And they can't tell us what your client ... said in response to those questions.

Ballis' former attorney, Royce, then took the stand and began to testify that at some point during the July 27 meeting Agent Lauzon jumped up and banged on the table. This is the only aspect of the meeting which the court allowed the defense to describe. To the prosecutor's subsequent objection, the court responded:

THE COURT: I sustain it. It is hearsay.

MR. HAYNES: What he says he saw him do?

THE COURT: What he did is also hearsay.

MR. HAYNES: The Court will not then let this witness say what he saw another witness do?

THE COURT: No, sir. That is right.

Later, counsel nonetheless attempted to again refer to the substance of the July 27th meeting:

Q: What happened? What happened that you saw? Not going into any conversation. What happened as you saw?

MR. BRADDOCK: Your Honor, I object at this time based on the Court's prior ruling that this would be hearsay.

THE COURT: I sustain it.

Although the Court then permitted Royce to recount his own statements during the meeting, any context of these statements was barred:

Q: Well, was Mr. Ballis doing or saying anything at the time that was the reason for your saying stop cutting us off?

MR. BRADDOCK: Your Honor, I object. It would be improper for this witness to give that answer.

THE COURT: I sustain it.

.     .     .     .     .

MR. HAYNES: The question asking if he saw anything that was the basis for his remark is [an] improper question, Your Honor?

THE COURT: Yes, sir. It is hearsay.

When Ballis himself took the stand, it became apparent that the court had simply overlooked counts seven and nine in making these rulings:

MR. HAYNES: In don't want to go into the debriefing but I want to show, Judge, what he told the agents on the 27th.

THE COURT: It is irrelevant.

MR. HAYNES: What he told the agents?

THE COURT: It is not an issue in this case.

As with Royce, the trial court did initially allow Ballis to testify as to what he himself said at the debriefings, but would allow no testimony as to what anyone else did or did not say, or how they said it. Even with respect to Ballis' own statements, however,

the court soon stopped taking evidence, on the grounds that Ballis had already testified generally that his statements to the agents conformed with his other testimony on the substantive fraud charges. Defense counsel pointed out that Ballis needed to testify as to the exact things that he told the agents "because that is the exact place where the indictment accuses Mr. Ballis of telling an untruth to the federal agents." The court responded:

> We've heard Mr. Ballis' testimony as to what happened [with the loans]. Now you are asking him to bolster his testimony by asking him specific questions [about what he told the agents]. Well, if he hasn't told them anything different than what his testimony is here, then ... you don't need to ask him specifically, well, did you tell them this and what did you tell them regarding this because he has already told them when you asked him originally, what is your testimony about what happened.... And anything that Mr. Ballis says now is simply bolstering....[2]

## B.  ANALYSIS

■■■  All of this excluded testimony was highly relevant to the crimes charged, as the parties' words and actions at the debriefings formed the entire basis for count nine of the indictment, as well as for overt act 11 of count seven. Moreover, the testimony would have been neither hearsay nor "bolstering." Hearsay is generally any out-of-court *statement* which is offered to prove the *truth* of the matter asserted. Fed.R.Evid. 801(c) (emphasis added). Therefore, nothing that the federal agents *did* at the debriefings could have been hearsay, as no party suggests that their actions were offered as truthful assertions, and nothing they *said* at these meetings would have been hearsay testimony from Ballis or Royce, because these witnesses only wanted to show the effect of those statements, not the truth of those statements. Likewise, any testimony by Royce or Ballis as to what Ballis said at the meetings

would not be hearsay because they were not offered for the truth of the statements: the trial court allowed extensive testimony as to the truth of the underlying transactions being discussed. Rather, the statements were offered simply to prove that they were made and that, as made, they were not criminal as expressly charged in the indictment. Clearly, where the content of discussions which actually occurred is a primary issue, a party is entitled to adduce evidence of those discussions at trial. *NLRB v. J.P. Stevens & Co.,* 538 F.2d 1152, 1162 (5th Cir.1976).

■■■  Moreover, Ballis' testimony as to his prior statements would certainly not have been "bolstering." "Bolstering" is the use of evidence of prior occurrences of truthfulness by an unimpeached witness to show that the witness is generally believable. *United States v. Fusco,* 748 F.2d 996, 998 (5th Cir. 1984). The term does not refer to a defendant's version of prior statements which are now charged as having been false. Neither would the testimony have been cumulative. Ballis was charged both with committing fraud and with later lying about it, and he should have been permitted to testify as to both charges.

The lack of merit in the government's trial objections can be easily grasped by considering the application of such rules against the government itself. If all testimony about statements at the meeting had been inadmissable hearsay, the government would never have been able to prove that Ballis had made any false statements at all. In fact, on appeal the government appears to have conceded that these rulings were erroneous, in that its brief studiously avoids defending their propriety.

Instead, the government counters that Ballis' complaints are "unfounded" because both Royce and Ballis[3] testified "extensively" concerning their version of what happened at the debriefings, were given "wide latitude" to present Ballis' story, "and were only limited

---

2.  Ballis also complains of the exclusion of other testimony relevant to these false statement charges. Given this Court's disposition of this issue below, we need not reach the propriety or reviewability of these rulings.

3.  The government makes the same claim about one Moen, but does not reference the location in the record of any such testimoı y.

from testifying about what third parties said." As noted above, however, this statement is a gross misrepresentation of the record and applicable law. This Court has located only two questions in Ballis' direct testimony concerning the debriefing to which a substantive defensive answer was permitted, and the government met the follow-up question to each of these with a sustained objection. Otherwise, Ballis was only able to present a limited defense by way of explanation while on cross-examination. As to the government's contention that defense witnesses were "only" limited from testifying about what third parties did or said at these meetings, it should be clear that—against a charge of failing to reveal material information at those meetings—evidence of the words and actions of the meetings' protaganists would have been uniquely relevant and admissable.

The government also contends that this Court should not even consider any error in the trial court's rulings because Ballis made no proffer of the excluded evidence as required by Rule 103(a) of the Federal Rules of Evidence. This Rule provides that error may not be predicated upon a ruling which excludes evidence unless a substantial right of the party is affected, and "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." This Circuit "will not even consider the propriety of the decision to exclude the evidence at issue, if no offer of proof was made at trial." *United States v. Winkle*, 587 F.2d 705, 710 (5th Cir.), *cert. denied*, 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979).

■ At trial, Ballis made no formal offer of specific excluded evidence. However, neither the Rules nor this Circuit require a *formal* offer to preserve error. *Id.* Rather, Rule 103(a)(2) only requires that the proponent of excluded evidence show in some fashion the substance of his proposed testimony, and Rule 103(b) leaves the form of offer within the discretion of the trial court. Admittedly, this framework renders the requirements of proffer less than definite, as the adequacy of a given informal proffer will necessarily depend upon its particular circumstances. *See, e.g., McQuaig v. McCoy*, 806 F.2d 1298, 1302 n. 3 (5th Cir.1987) ("[O]ur holding [finding proffer sufficient] is limited to the facts of this case."). Generally, however, excluded evidence is sufficiently preserved for review when the trial court has been informed as to what counsel intends to show by the evidence and why it should be admitted, and this court has a record upon which we may adequately examine the propriety and harmfulness of the ruling. *See id.* at 1301–02 (relying on these factors to determine that error had been preserved).

■ As the above-quoted transcript excerpts demonstrate, the trial court was well-informed as to the substance of the evidence it excluded. It is apparent both from the colloquies with the trial judge and "from the context within which questions were asked" that Ballis wished to offer testimony that the statements he made to the agents were substantively different from those recalled by the agents at trial, and that the actions of the agents themselves prevented his disclosure of the additional material information of which he was convicted of withholding.

Moreover, when arguing against the exclusion of evidence, "the degree of precision with which counsel is required to argue must be judged ... in accordance with the leeway the court affords him in advancing his argument." *Cf. Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 174–75 & n. 22, 109 S.Ct. 439, 452 & n. 22, 102 L.Ed.2d 445 (1988). At the bench conference in which the trial court initially excluded Ballis' evidence, defense counsel alerted the trial court that the evidence it would be excluding concerned Ballis' version of the debriefings. By itself, such a general description of the excluded evidence would not preserve error. *See Winkle*, 587 F.2d at 710 (counsel's statement that defendant's excluded testimony would concern "his version" of conversations is inadequate proffer). In this case, however, the trial court had admonished counsel earlier in the same conference that:

I've tried the Dailey case. I've tried the Motion to Dismiss and now I've heard the government's case in this case. There is no mystery here as to what all of us understand. We have all heard all of this at

least three times.... I don't need you to spoon feed me, counsel. I've heard this twice. If you have an objection, make it and I will rule on your objection. But you don't need to spoon feed me on every conceivable thought that you have. I probably may be equal to or ahead of you in some of this in what I've heard from the other trial.

Apparently out of deference to this warning, Ballis "proffered" the entire record of the motion to dismiss hearing (rather than specifically listing the parts of that testimony which he would like to present) both after Royce's testimony and at the close of evidence. At that hearing, Royce and Ballis had testified that at the debriefings the government's agents had never asked about the information Ballis had allegedly withheld, that they had made it clear from their words and actions that they did not wish to hear about transactions other than those which they had asked about, and that they misunderstood the statements which Ballis had in fact made.

Ordinarily, of course, such a global proffer of mass prior testimony would not be sufficient to preserve error. In this case, however, where the trial judge expressed an intimate familiarity with the testimony offered and in fact accepted the offer as a sufficient proffer, we hold that the defendant fulfilled the purpose of Rule 103(a) in apprising the trial court of the substance of the evidence being rejected and giving the court sufficient information for it to decide that exclusion would be erroneous and unfair. *See McQuaig,* 806 F.2d at 1301–02 (finding error preserved where no proffer made at trial, but detailed discussion of the substance of the rejected testimony took place at pre-trial conference, where trial court accepted offering party's objection to exclusion); *Collins v. Wayne Corp.,* 621 F.2d 777, 781 (5th Cir. 1980) (finding error preserved on exclusion of deposition testimony, despite failure to offer

deposition at trial, where substance of deposition had been made known to the district court during motion in limine hearing).[4]

■ Finally, the government contends that the trial court did not abuse its broad discretion in excluding evidence based on relevance or materiality, or that any error in these rulings was harmless. However, here we are faced with a trial court's exclusion of almost all of a defendant's evidence as to his version of the events surrounding one of his alleged criminal acts. This exclusion effectively precluded the presentation of any defense to one substantive count of the indictment and one alleged "overt act" of a conspiracy count. The proffered evidence would have been highly relevant and clearly admissible. Therefore, the trial court had no discretion to refuse it, and the exclusion was presumptively harmful. Accordingly, the convictions on counts seven and nine of the indictment cannot stand.

## III. SEVERANCE

Ballis next contends that the district court erroneously denied his motion to sever counts one through six of the indictment, charging bank fraud and conspiracy to defraud, from counts seven through ten, charging conspiracy to obstruct justice, obstruction of justice, and making false statements. Ballis does not deny that this joinder was appropriate under Fed.R.Crim.P. 8(a) because the counts were similar, based on the same act or transaction, or based on two or more acts or transactions connected together or constituting parts of a common scheme or plan. *See United States v. Chagra,* 754 F.2d 1186, 1188 (5th Cir.), *cert. denied,* 474 U.S. 922, 106 S.Ct. 255, 88 L.Ed.2d 262 (1985); *United States v. Davis,* 752 F.2d 963, 972 (5th Cir. 1985). Rather, he contends that joinder unduly prejudiced him by forcing him to choose between exercising his right to testify as to the obstruction counts or exercising his Fifth

---

4. The government also seems to contend that no error occurred because Ballis did not attempt to elicit the excluded testimony from other witnesses. Similarly, the government objects to Ballis' pointing out in his reply brief, for the first time, additional instances of the court's rejecting evidence that the agents "cut him off" in the de-

briefings. However, "[i]f the trial judge refuses to hear one witness and an offer is made, the proponent need not call all of the other witnesses who would testify to the same fact. Like the objector, he is entitled to rely on the ruling of the court." 21 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 5040 (1977).

Amendment privilege to not testify as to the substantive counts.

■ A district court may sever offenses properly joined under Rule 8 if it appears that the defendant may be prejudiced by the joinder. Fed.R.Crim.P. 14. In making this decision, the trial judge must balance the prejudice to the defendant against the interests of judicial economy. *United States v. Forrest,* 623 F.2d 1107, 1115 (5th Cir.), *cert. denied,* 449 U.S. 924, 101 S.Ct. 327, 66 L.Ed.2d 153 (1980). The court's ruling on whether there is sufficient prejudice from the joinder of offenses to require a severance is reviewed for abuse of discretion, and will not be reversed without a showing of specific and compelling prejudice which results in an unfair trial. *Chagra,* 754 F.2d at 1186. "The burden of demonstrating prejudice is a difficult one, and the ruling of the trial judge will rarely be disturbed on review.... The defendant must show something more than the fact that a separate trial might offer him a better chance of acquittal." *United States v. Park,* 531 F.2d 754, 762 (5th Cir.1976) (citations omitted).

Moreover, "[s]everance is not mandatory simply because a defendant indicates that he wishes to testify on some counts but not on others. Rather, '[s]everance for this reason, as for any other, remains in the sound discretion of the trial court.'" *Alvarez v. Wainwright,* 607 F.2d 683, 685 (5th Cir.1979) (quoting *United States v. Williamson,* 482 F.2d 508 (5th Cir.1973); *see also Davis,* 752 F.2d at 972; *Forrest,* 623 F.2d at 1115. "Consequently, a defendant seeking severance of charges because he wishes to testify as to some counts but not as to others has the burden of demonstrating 'that he has both important testimony to give concerning one count and a strong need to refrain from testifying on the other.'" *Davis,* 752 F.2d at 972 (*quoting Forrest,* 623 F.2d at 1115).

On appeal, Ballis claims that joinder here prejudiced him because he could only prove his defense of actual innocence to the obstruction charges by presenting evidence that, contrary to the government's position, he had in fact fully confessed to the government investigators his guilt on the fraud and conspiracy counts. Therefore, he argues,

joinder deprived him of his perceived rights to remain silent as to the fraud counts in one trial while exercising his right to present evidence in his own defense on the obstruction counts in a separate trial.

At trial, however, Ballis did not point out this dilemma with sufficient specificity for the trial court to have abused its discretion in denying the motion. On the day trial began, Ballis still indicated indecision as to whether he would testify even in a severed trial, and did not indicate what his testimony would be in any event. As we have oft-stated, this is simply not a sufficient showing of prejudice:

> In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reason for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of "economy and expedition in judicial administration" against the defendant's interest in having a free choice with respect to testifying.

*Park,* 531 F.2d at 763 (quoting *Baker v. United States,* 401 F.2d 958, 977 (D.C.Cir. 1968)) (upholding refusal to sever in deference to defendant's desire to testify only on one count where, immediately before trial, defendant had not decided whether to testify); *United States v. Outler,* 659 F.2d 1306, 1313 (5th Cir.1981) (affirming refusal to sever where defendant "made no explanation as to why it was important for him to remain silent as to [some] charges, other than express his desire to do so."), *cert. denied,* 455 U.S. 950, 102 S.Ct. 1453, 71 L.Ed.2d 665 (1982); *Forrest,* 623 F.2d at 1115 ("Appellant's bare allegation that he wanted to testify with respect to one count but not with respect to the other gave the trial judge no factual basis on which to evaluate possible prejudice.").

■ Moreover, we cannot find that the district court abused its discretion in denying severance of the charges because Ballis has not shown that he suffered a specific and compelling prejudice as a result of the joinder. No prejudice inures to the defendant

where a severance of counts would not result in a segregation of evidence. *United States v. Winn,* 948 F.2d 145, 161 (5th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1599, 118 L.Ed.2d 313 (1992); *United States v. Scott,* 659 F.2d 585, 589 (5th Cir.1981), *cert. denied,* 459 U.S. 854, 103 S.Ct. 121, 74 L.Ed.2d 105 (1982); *Park,* 531 F.2d at 763. Here, even if Ballis had been tried separately on the bank fraud counts, evidence of the obstruction of justice offenses would have been probative evidence of consciousness of guilt and admissible against the defendant whether he testified or not. *Davis,* 752 F.2d at 972. Similarly, evidence of the bank fraud offenses would have been probative of Ballis's motive to obstruct the government's investigation and to make false statements to federal authorities. Thus, this evidence would have been admissible in a separate trial under Fed.R.Evid. 404(b). Furthermore, Ballis points to no authority suggesting that, even if the counts had been severed, the government could not have tried him on the obstruction counts first. If he had testified in that trial, admitting his guilt to the fraud counts, these admissions would have been admissible against him in the subsequent fraud trial whether he took the stand or not. *See* Fed.R.Evid. 804(b)(1) & (3). Therefore, the claim of real prejudice is speculative at best, and we cannot find that the trial court abused its discretion in denying severance.

## IV. BREACH OF THE PLEA AGREEMENT

Ballis argues that rescission of the plea agreement was not an available remedy to the government because (1) the government bargained away the remedy of rescission, (2) the government waived the right to rescind the plea agreement by failing to promptly rescind, (3) the government ratified the plea agreement by retaining the benefit of the plea bargain, (4) the doctrine of "unclean hands" barred the government's equitable remedy of rescission, and (5) the enforceability of the agreement should have been decided by the judge who accepted the plea, rather than by the subsequent trial judge. We find none of these positions persuasive.

Prior to trial, Judge Hoyt held an evidentiary hearing to determine whether Ballis had breached his plea agreement with the government. In this agreement, Ballis had promised to provide "full and truthful" information concerning involvement of himself and others in the defrauding of FSAET. Following the hearing, the district court found that Ballis, in violation of his agreed-upon duties, had withheld important information about these activities from the government and otherwise gave untruthful testimony. Moreover, the court found that Ballis had never intended to abide by the plea agreement and therefore had induced the agreement by fraud. Accordingly, the court ruled that the agreement had been void ab initio.

■ A district court's findings as to whether a defendant has breached a plea agreement will be overturned only if clearly erroneous. *United States v. Gerant,* 995 F.2d 505, 508 (4th Cir.1993); *United States v. Tilley,* 964 F.2d 66, 71 (1st Cir.1992); *United States v. Wood,* 780 F.2d 929, 932 (11th Cir.), *cert. denied,* 479 U.S. 824, 107 S.Ct. 97, 93 L.Ed.2d 48 (1986). Any credibility decisions are reserved to the district court's discretion and will not be disturbed on appeal. *Gerant,* 995 F.2d at 508. Appropriately, therefore, Ballis does not contest the court's finding that he materially breached or fraudulently induced the plea agreement. He claims only that the remedy of rescission was inappropriate in this case.

■ Plea bargain agreements are contractual in nature, and are to be construed accordingly. *United States v. Fulbright,* 804 F.2d 847, 852 (5th Cir.1986). Under the principles of contract law, a party may avoid the obligations of an agreement gained by misrepresentation or fraud. *United States v. Texarkana Trawlers,* 846 F.2d 297, 304 (5th Cir.), *cert. denied,* 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988). Moreover, if a defendant materially breaches his commitments under a plea agreement, the government is released from its obligations under that compact and may bring a new indictment on previously dismissed charges, regardless of what it may have promised earlier. *Tilley,* 964 F.2d at 71; *United States v.*

*Britt,* 917 F.2d 353 (8th Cir.1990), *cert. denied,* 498 U.S. 1090, 111 S.Ct. 971, 112 L.Ed.2d 1057 (1991); *United States v. Gonzalez–Sanchez,* 825 F.2d 572, 578 (1st Cir.) ("[T]he failure of the defendant to fulfill his promise to cooperate and testify fully and honestly releases the government from the plea agreement."), *cert. denied,* 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987); *United States v. Reardon,* 787 F.2d 512, 516 (10th Cir.1986) (same).

Nonetheless, Ballis contends that the government could not rescind the plea agreement because it bargained away that right during the plea negotiations. According to Ballis, the government's sole remedy for a failure to give complete and truthful information would be to prosecute him for perjury, and not to seek rescission. He also argues that since the written letter agreement was silent or ambiguous on the remedies available, the district court erred in refusing to hear extrinsic evidence concerning the intent of the parties in this regard, such as similar agreements which specifically permitted the remedy of rescission.

■ Even if the contract were ambiguous, however, and Ballis could prove that the government had "bargained away" the rescission remedy, he would not be entitled to relief. Having induced the plea agreement by fraud, Ballis may not attempt to enforce *any* part of the agreement.

■ Moreover, even were the agreement enforceable, Ballis' obligations under it were not ambiguous. The letter clearly stated that its terms were conditioned on Ballis' giving complete and truthful information about the loans at FSAET, and clearly states that it reflects the entire agreement of the parties. There is nothing in the agreement suggesting that the government waived its right to prosecute Ballis for the underlying offenses and any other offenses the government discovered if he failed to perform as promised. It certainly does not imply that the government had agreed that prosecuting Ballis for perjury was its exclusive remedy for a breach of the agreement. Although circumstances surrounding the agreement's negotiations might indicate that such was Ballis' intent, parol evidence is inadmissible

to prove the meaning of an unambiguous plea agreement. *United States v. Ingram,* 979 F.2d 1179, 1184 (7th Cir.1992). The lack of comprehensive provisions specifying remedies in the case of breach does not render the agreement ambiguous; contracts typically presume compliance, and the remedies for breach are commonly supplied simply by reference to the applicable law of contracts.

For this same reason, there is also no merit to Ballis' contention that he suffered any prejudice from the trial court's refusal to transfer the motion to dismiss to the judge who presided over the original plea. Judge Hoyt correctly interpreted the agreement, and another judge's supposed knowledge of the agreement could not have properly rendered a different result.

■ Ballis also alleges that the government waived the right to rescind the plea agreement by failing to promptly rescind the agreement after learning of his breach. He argues that even if the agreement was induced by his fraud, it was merely voidable rather than void, and the government was required to either rescind or affirm within a reasonable time. Ballis points out that AUSA Lansden admitted learning of the breach in Spring, 1990 (two years before the government rescinded the agreement by indicting him), and that FBI Special Agent Norman Townsend had discovered Fairchild's "cut and paste job" in the safe deposit box in 1989. Therefore, Ballis reasons, the government had notice of his breach even before he pled guilty, and waived its right to rescind the plea agreement by failing to do so promptly when it became aware of this breach. Moreover, he argues that the government ratified the agreement because it retained the benefits of the plea agreement after it learned of the breach, in that Ballis pled guilty, served two years probation, and provided the government with information.

However, Ballis has provided no evidence establishing that the government knew of *his* involvement with Fairchild's cover-up either prior to his plea or an unreasonable length of time before bringing the indictment in this case. *See Britt,* 917 F.2d at 360 (refusing to find waiver). Nor did the government ever

indicate to Ballis that it would ratify the plea agreement after discovering the breach. Furthermore, Ballis' contention that the government received the benefit of the plea bargain is specious. The government received only untruthful and misleading information in exchange for the agreement, while Ballis received a light sentence of only two years' probation.

Finally, Ballis contends that the government should not have been permitted the equitable remedy of rescission because it entered the agreement with "unclean hands." Ballis bases this argument on evidence that the AUSAs who proffered the agreement intended to "trick" Ballis into not fulfilling his end of the bargain. The trial judge rejected this conclusion, however, and we cannot say that this finding was clearly erroneous.

## V. CONCLUSION

Having fraudulently induced his original plea agreement, Ballis is not entitled to enforcement of that agreement in order to avoid prosecution on the charges here. Ballis also did not demonstrate prejudice from the joinder of counts in this case sufficient that we may say the trial judge abused his discretion in refusing to grant a severance. We are persuaded, however, that the trial court erroneously excluded Ballis' defense to the charges in counts seven and nine of the indictment and, accordingly, these convictions are REVERSED and REMANDED for further proceedings, as may be appropriate. In all other respects, however, we AFFIRM.