# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-10509

United States Court of Appeals
Fifth Circuit

**FILED**

September 27, 2019

Lyle W. Cayce
Clerk

GARY D. EPPLE,

      Plaintiff - Appellant

v.

BNSF RAILWAY COMPANY,

      Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:16-CV-1505

Before JONES, HO, and OLDHAM, Circuit Judges.

PER CURIAM:*

      Gary Epple, a former employee at BNSF, commenced this action after he was dismissed from his position for failing to follow the company's safety rules. Epple claims the dismissal was in fact a retaliatory action taken in violation of the Federal Railroad Safety Act (FRSA). The parties dispute whether the FRSA requires a plaintiff to prove that his former employer acted with a retaliatory motive—an issue that has divided our sister circuits. We need not

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-10509

wade into that dispute in order to resolve this appeal, however, because BNSF has shown by clear and convincing evidence that it would have dismissed Epple regardless.   49 U.S.C. § 42121(b)(2)(B)(iv).   We accordingly affirm on this ground.

I

Epple was a conductor employed by BNSF.  On September 24, 2010, he and an engineer operated a train that was scheduled to terminate in Oklahoma City.  About eleven hours in, the men received instructions to tie the train down in Purcell, Oklahoma.  Epple was then told to exit the train and separate the cars so that vehicles on an intersecting road might pass.

Having completed the task, Epple walked alongside the train towards the locomotive when he encountered a pile of debris blocking his route.  Rather than backtracking, Epple made the decision to go around.  This necessitated walking on top of a wooden culvert.  The culvert had large gaps between the planks of wood.  It had no handrails or galvanized tread.  And Epple was further impaired by heavy rain and lack of lighting.  When Epple stepped onto the culvert, his foot slipped through one of the gaps, causing him to fall on his right knee and twist his back.

BNSF transported Epple to a local hospital for treatment.  He was met there by Brian Atkins and Steven Sergas, both of whom were charged with investigating the incident.  The two men had Epple fill out a personal injury report and questioned him about the events leading up to his injury.  At some point during the conversation, the two men instructed Epple to keep Sergas apprised of any changes in his condition.  Epple, however, never did.  He testified at trial that he had no recollection of the request.

The investigation led Atkins and Sergas to conclude that Epple violated BNSF's safety rules when he elected to traverse the culvert rather than taking

the safe course. They noted that, while the debris should not have been present, it would not have posed a danger had Epple acted prudently.

Pursuant to the company's collective bargaining agreement, BNSF issued a notice of investigation. The company held a hearing where Epple had the opportunity to cross-examine company witnesses, call his own witnesses, present evidence, and testify. He was permitted to consult with his union representative prior to and during the hearing to work out a defense strategy.

After the hearing adjourned, three people in BNSF management reviewed the findings, including Jim Hurlburt, the Director of Labor Relations, who worked outside of the operations department. All three men concluded that Epple committed at least two (and potentially three) serious infractions of the rules. All three recommended dismissal. The company's Policy for Employee Performance Accountability (PEPA) states that two serious rule violations within a 36-month review period is grounds for dismissal.

BNSF accepted the assessment and notified Epple on January 4, 2011 that it was terminating his employment.

Epple filed a timely administrative claim under 49 U.S.C. § 20109 with the Occupational Safety and Health Administration (OSHA). The investigation took several years, but the agency ultimately concluded that there was reasonable cause to believe that BNSF violated the FRSA when it terminated Epple's employment.

Because OSHA failed to issue a final decision within 210 days, Epple had the option of seeking de novo review in federal court. 49 U.S.C. § 20109(d)(3). He filed a complaint on December 16, 2015 in the Western District of Oklahoma. The case was then transferred to the Northern District of Texas. BNSF moved for summary judgment, which was granted in part. The only claim to survive was Epple's claim that BNSF terminated his employment

because he filed an injury report—an action, which, if proven, violates 49 U.S.C. § 20109(a).

The case proceeded to a bench trial. Epple sought to admit a letter from OSHA to BNSF summarizing the agency's investigative findings. BNSF objected, arguing that the letter was hearsay and that it did not fall under the government document exception. The district court sustained the objection and refused to enter the letter into the record for consideration.

Following the trial, the district court entered an order and judgment in favor of BNSF. It determined that the FRSA required Epple to establish a retaliatory motive before qualifying for relief, which he failed to do. The district court reasoned that Epple "failed to prove the contributing factor element of his claim to satisfy his burden under 49 U.S.C. § 20109." The order made no mention of BNSF's alternative argument for dismissal, which was that BNSF satisfied its affirmative defense under 49 U.S.C. § 42121(b)(2)(B)(iv).

## II

Epple appeals the district court's interpretation of the FRSA as well as its refusal to admit the OSHA letter into evidence. We assess both of Epple's contentions under well-established standards of review and affirm the judgment for the reasons stated below. *See Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 601 (5th Cir. 2000) (stating that findings of fact in a bench trial are reviewed for clear error while legal issues are reviewed de novo); *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994) (holding that a trial court's exclusion of evidence is reviewed for abuse of discretion).

## A

The FRSA prohibits railroad carriers from "discharge[ing], demot[ing], suspend[ing], reprimand[ing], or in any other way discriminat[ing] against an employee if such discrimination is due, in whole or in part, to" the employee

participating in a protected activity.   49 U.S.C. § 20109(a).   Among these activities include the employee notifying or attempting to notify the railroad carrier "of a work-related personal injury."  49 U.S.C. § 20109(a)(4).

Unlike the typical discrimination statute, the FRSA incorporates by reference the rules, procedures, and burdens of proof delineated in 49 U.S.C. § 42121.  Under these standards, relief may be granted if the employee shows that the protected activity was a "contributing factor" to the adverse action taken by the railroad carrier.  The carrier, however, will not be found liable if it proves by clear and convincing evidence that it would have made the same personnel decision notwithstanding the protected activity.  *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 454 (9th Cir. 2018).

The parties disagree about whether the FRSA's reference to § 42121 eliminates the plaintiff's obligation to establish a discriminatory or retaliatory motive.  Epple argues that it does.  BNSF insists that the contributing factor language altered the amount of evidence needed to establish a claim under the FRSA as opposed to jettisoning the scienter requirement altogether.   The question has divided our sister courts.  *Compare Armstrong v. BNSF Ry. Co.*, 880 F.3d 377, 382 (7th Cir. 2018); *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 791 (8th Cir. 2014), *with Frost v. BNSF Ry. Co.*, 914 F.3d 1189, 1196 (9th Cir. 2019); *Araujo v. New Jersey Transit Rail Operations, Inc.*, 708 F.3d 152, 158 (3d Cir. 2013).

We need not resolve this dispute in order to decide this appeal, however, because the record developed at trial establishes by clear and convincing evidence that BNSF would have dismissed Epple regardless of the injury report that he filed.

The record shows that BNSF terminated Epple's employment only after it subjected the alleged charges to a thorough, multi-stage investigation.  The investigation had robust safeguards built in and gave Epple plenty of

opportunity to challenge the evidence against him as well as introduce information and context that could help vindicate the decisions he made leading to his injury.  For example, the company assigned supervisors to interview Epple within hours of the accident and to examine the location where Epple fell.  Then, after the supervisors concluded that a possible rule violation took place, the company called for a formal hearing.  The proceedings were conducted "by the book."  And Epple offers no evidence that any of the participants at the hearing treated it frivolously or in a pretextual manner.

Three different BNSF officials reviewed the investigation's findings, including Hurlburt, the Director of Labor Relations, who was outside of the department's chain of command and, therefore, could act as neutral party. Moreover, the discharge decision fully complied with company policy.  Epple's failure to take the safe course and to comply with his supervisor's instructions both constitute serious infractions.  And the company's PEPA policy provides that an employee is subject to dismissal if he commits two serious offenses within a 36-month review period.

The disciplinary process in this case bears close resemblance to the procedures and safeguards that the defendant followed, and that the Eighth Circuit upheld as clear and convincing evidence, in *Kuduk*, 768 F.3d at 792. There, the court noted that both the defendant and the union conducted a thorough investigation, complemented by a formal and adversarial hearing. The defendant also ensured that the investigation was reviewed by a disinterested party, whose judgment was then approved by senior management.  Based on these procedures, the Eighth Circuit found clear and convincing evidence that the defendant would have made the same termination decision based on similar evidence, regardless of the employee's protected activity.  Although the court did not offer much explanation, it is easy to see why the court gave these procedures so much weight.  The proceedings

No. 18-10509

themselves cost time, money, and resources. A company signals its concern when it is willing to expend these resources to uncover the truth about an employee's conduct. The procedures also have the added benefit of diluting the influence of any individual with an improper motive. The more layers of review and the more personnel involved makes it less likely for bad actors to steer the process toward an outcome the company would not have otherwise chosen. The company essentially limits the possibility that it pursued disciplinary measures for any reason other than the employee's wrongful conduct.

In addition, Epple previously reported workplace injuries on more than a dozen occasions yet was never disciplined or treated unfavorably as a result. Out of 37 employees in the Texas Division who reported injuries in 2010, only two received any form of discipline within three months of their injury. A history of compliance does not preclude the possibility of discriminatory conduct by BNSF, but it does imply that the circumstances surrounding Epple's injury set this incident apart. Combining this with the robust procedures that BNSF took to ascertain the facts and arrive at its decision, the evidence firmly shows that BNSF believed Epple committed a firing-level offense. In short, it was Epple's perceived conduct—not his protected activity—that led to the disciplinary measures being taken against him. The company therefore qualifies for the affirmative defense provided in § 42121(b)(2)(B)(iv).

B

As for Epple's argument that the district court erred by refusing to admit a letter from OSHA to BNSF into evidence, Epple did not make an offer of proof sufficient to preserve the objection to the exclusion of the letter. Federal Rule of Evidence 103(a) permits a party to claim error in a ruling to exclude evidence only "if the error affects a substantial right of the party" and "a party informs the court of its substance by an offer of proof, unless the substance was

7

apparent from the context." FED. R. EVID. 103(a)(2). This circuit "will not even consider the propriety of the decision to exclude the evidence at issue, if no offer of proof was made at trial." *United States v. Winkle*, 587 F.2d 705, 710 (5th Cir. 1979). Although a formal offer is not required to preserve error, the party must at least inform the trial court "what counsel intends to show by the evidence and why it should be admitted." *United States v. Ballis*, 28 F.3d 1399, 1406 (5th Cir. 1994).

Here, Epple failed to proffer the substance of the OSHA letter at trial. He merely referred to the evidence as the "OSHA findings" and stated that the trial court had referenced the letter in its summary judgment motion. This brief reference to the letter was not enough to inform the trial court "what counsel intend[ed] to show by the evidence." *Ballis*, 28 F.3d at 1406. Epple cannot now claim error when he did not inform the trial court of the substance of the excluded evidence by an offer of proof, because the substance is not apparent from the context.

Even if Epple complied with Rule 103 and properly preserved the issue, the district court did not abuse its discretion in excluding the letter. Epple notes that we have carved out a limited hearsay exception for certain Equal Employment and Opportunity Commission (EEOC) reports. *Smith v. Universal Services, Inc.*, 454 F.2d 154, 157 (5th Cir. 1972). Specifically, we recognized that certain investigative reports had high probative value, which, if circumstances allowed, outweighed any possible prejudice to the defendant. *Id.* Epple asserts that there is no meaningful difference between the EEOC investigative report at issue in *Smith* and the OSHA investigative report at issue here, because both involved expert governmental agencies seeking to determine whether probable cause exists. He therefore argues that *Smith* should have controlled, and that the district court abused its discretion when it refused to admit the OSHA letter into the record.

We are not persuaded.  This court previously cautioned that *Smith* should not be read to negate the district court's responsibility under Federal Rule of Evidence 403 to balance an exhibit's probative value with its possible prejudicial effect.  *Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 201–02 (5th Cir. 1992).  *Smith* simply gives district courts the option to admit the agency's investigative findings when appropriate under Rule 403.  Thus, to the extent that *Smith* applies to the OSHA letter, the district court retained discretion over its admissibility.  And Epple does not explain how the district court erred in its Rule 403 analysis.

\* \* \*

For the above reasons, we affirm.