# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
May 19, 2023

Lyle W. Cayce
Clerk

_____

No. 22-30089
_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Steven Marcus Kelley,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:20-CR-294-1

_____

Before Richman, *Chief Judge*, and Haynes and Graves, *Circuit Judges*.

Per Curiam:[*]

Steven Marcus Kelley argues that the district court made two key evidentiary errors in his murder-for-hire trial. He contends that the district court erred in determining that certain evidence was hearsay. He did not, however, properly preserve this issue for appeal. He also contends that the district court erred by disallowing him to bring in evidence from a previous

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

criminal charge. That evidence's probative value was substantially outweighed by a danger of confusing the jury. We AFFIRM.

## Factual Background

Kelley was incarcerated in the Ouachita Correctional Center (OCC) awaiting trial in state court for the alleged sexual abuse of his former stepdaughters. While incarcerated, Kelley wrote and mailed a murder-for-hire letter, which described his ex-wife, Jeannie, provided specific instructions on how to kill her, and offered money for her murder. Kelley was indicted for use of a facility of interstate commerce in the commission of murder-for-hire under 18 U.S.C. § 1958.

The murder-for-hire plan was discovered when Odyssey Straughter, a former inmate at OCC, turned over to law enforcement a letter soliciting the murder of Jeannie. The letter described Jeannie's physical characteristics, her vehicle, her workplace, and her usual work schedule. It insisted that the murder "look like a robbery" with "2 in the chest, 2 in the head" and that the perpetrator "[m]ake sure it counts." It included a map to assist in finding Jeannie's workplace and leaving without being captured on surveillance cameras. The letter offered "$10K for the job."

The letter had been mailed from OCC in December 2019, and it was addressed to "Dillon Jackson" with "Ty Neathery" named for the return addressee. Straughter had been incarcerated in OCC for approximately eight days in 2017, but he did not know Dillon Jackson or Ty Neathery. Straughter did recall providing his address to his cellmate at OCC, who was later identified as Nicholas Emanuel. Investigators found Straughter's address written on a piece of paper when they searched Emanuel's bunk. Neathery, Emanuel, and Kelley had been incarcerated together at OCC. Surveillance videos from OCC showed Kelley writing a letter, going to Emanuel's cell to fill out an envelope, Neathery entering that cell and talking to Kelley, and

No. 22-30089

Kelley giving Emanuel a "fist bump." Kelley gave the envelope to another inmate who then gave it to a deputy for mailing. Kelley entered into a stipulation providing that he wrote the letter and gave it to another inmate for mailing.

Kelley's defense at trial was that he wrote and mailed the letter under duress and lacked the requisite intent to be found guilty. He claimed that Emanuel had forced him to write the letter by threatening to tell his attorney that Kelley had confessed to molesting his former stepdaughters. He further claimed that Emanuel told him what details to include in the letter and that Emanuel would hold it over his head in order to extort money from Kelley.

## Discussion

### 1. Kelley Failed to Follow Federal Rule of Evidence 103(a)(2)

At trial, Kelley attempted to testify about Emanuel's threats and directions regarding the letter, but the Government objected to this testimony, arguing it was hearsay. The district court sustained the Government's objections repeatedly while Kelley was on the stand.

Federal Rule of Evidence 103(a)(2) provides that, in order to preserve an evidentiary ruling excluding evidence, the party must "inform[] the court of [the evidence's] substance by an offer of proof, unless the substance was apparent from the context." In interpreting Rule 103(a)(2), the Fifth Circuit has explained that "[w]hile some circuits have apparently taken a more lenient approach, this circuit will not even consider the propriety of the decision to exclude the evidence at issue, if no offer of proof was made at trial." *United States v. Winkle*, 587 F.2d 705, 710 (5th Cir. 1979) (internal citation omitted).

The government frequently objected to Kelley's trial testimony on hearsay grounds. After one Government objection, the district court

3

No. 22-30089

pointedly asked Kelley's trial counsel if he had "any exception to the hearsay rule on that you're asserting?". [1] Counsel failed to provide an exception. Frequently when the Government objected, Kelley's trial counsel would reword the question to avoid any potential hearsay issue. Kelley consistently failed to show why the evidence was admissible.

Kelley needed to explain (1) what he intended to show by the evidence and (2) why the evidence was admissible. *United States v. Ballis*, 28 F.3d 1399, 1406 (5th Cir. 1994). "Generally, however, excluded evidence is sufficiently preserved for review when the trial court has been informed as to what counsel intends to show by the evidence and why it should be admitted, and this court has a record upon which we may adequately examine the propriety and harmfulness of the ruling." *Id.* The substance of the evidence Kelley sought to admit was not apparent from the context, and the trial counsel did not explain the grounds for admissibility. Therefore, the district court was not able to consider the arguments now advanced on appeal.

"Because an adequate offer of proof was not made, we 'may not' find error under Rule 103, as interpreted in this circuit." *Winkle*, 587 F.2d at 710; *see also United States v. Ramirez-Lopez*, 630 F. App'x 352, 352–53 (5th Cir. 2016) ("Because Ramirez–Lopez's counsel failed to inform the court that he was offering the statements for a permissible, non-hearsay purpose, Ramirez–Lopez did not preserve the issue for review."). Since Kelley waived this issue for review, we AFFIRM the district court on its hearsay rulings.

---

[1] Kelley also argues that what he was seeking to admit was not an "exception" to the hearsay rule, but rather it was not hearsay because it did not rely on the truth of the matter asserted. But his attorney never explained that contention to the district judge. Indeed, the attorney kept advising Kelley not to say what Emanuel told him, so he seemed to agree with the hearsay ruling.

**2. The District Court Did Not Err in Excluding Kelley's Evidence Relating to the Merits of the State Sexual Abuse Charges**

"A district court's determination under Rule 403 with respect to whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice is reviewed under an abuse of discretion standard but, at least generally, with 'an especially high level of deference to' the district court, with reversal called for only []'rarely' and only when there has been 'a clear abuse of discretion.'" *United States v. Dillon*, 532 F.3d 379, 387 (5th Cir. 2008) (quoting *United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007)).

Before trial, the Government sought an order from the district court "(1) permitting at trial limited evidence to establish the defendant was under state indictment for sex crimes at the time of the murder-for-hire alleged in the . . . indictment and (2) precluding the defense from introducing evidence that amounts to a mini trial on the merits of the pending state sex crimes case." In response, Kelley conceded that "evidence of the sex crimes was admissible as intrinsic evidence," but he argued that limiting his ability to present evidence about the factual allegations underlying the alleged sex crimes would deprive him of his constitutional right to a fair trial.

The district court granted the Government's motion, allowing evidence of the charges but disallowing Kelley to conduct a "mini trial of the state sex abuse charges." The court determined that the evidence of the existence of the sex crimes was admissible both as intrinsic evidence and extrinsic evidence under Rule 404(b). As to Kelley's evidence, the court reasoned that "conducting a minitrial of the state sex abuse charges would be confusing to the jury and is not relevant or necessary."

This was not an abuse of discretion. The probative value of Kelley's proffered evidence—direct testimony from an investigator and the victims,

No. 22-30089

as well as documents from the investigation—was low. That evidence would not show definitively that the charges were meritless; the jury would have needed to weigh the credibility of those witnesses, assess the evidence, and consider the elements of the underlying state charges. At the same time, the danger of confusing the issues and misleading the jury with this evidence was high. *See, e.g.*, *United States v. Ramos*, 537 F.3d 439, 456 (5th Cir. 2008) ("Disputes relating to a completely different scenario involving another drug-trafficking episode—and the evidentiary disputes accompanying it—would assuredly have diverted the attention of the jury, confused the issues actually to be decided, and unfairly prejudiced the conduct of the trial. . . . The district court therefore did not abuse its discretion in excluding the evidence under Fed. R. Evid. 403."). It was not an abuse of discretion for the district court to hold that presenting such evidence would confuse the jury as to the evidence it needed to weigh and the issues it needed to decide.

## Conclusion

The judgment of the district court is AFFIRMED.