United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 12, 2007**

Charles R. Fulbruge III
Clerk

*In The United States Court Of Appeals
For The Fifth Circuit*

No. 05-11384

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

ARTURO RODRIGUEZ-MARTINEZ,

        Defendant - Appellant.

Appeal from the United States District Court
For the Northern District of Texas
No. 4:05-CR-00035

Before GARWOOD, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:[*]

A jury found Arturo Rodriguez-Martinez guilty of possessing more than five kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Rodriguez-Martinez timely appealed, claiming that there was insufficient evidence to support his conviction and that his Sixth Amendment confrontation rights were violated. For the reasons that follow, we vacate Rodriguez-Martinez's conviction and remand for a new trial.

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

# I

On February 4, 2005, Officer Jerry Cedillo, a Fort Worth police officer assigned to the Drug Enforcement Administration Task Force, arrested Luis Camarillo for possession of cocaine. Camarillo agreed to cooperate with Officer Cedillo and became a confidential informant. As an informant, Camarillo called a man known as "Jorge" on his cell phone to arrange a delivery of 15 kilograms of cocaine. Over the course of the next few days, the informant talked with Jorge about the delivery several times, and Officer Cedillo listened to some of the phone calls through the informant's speaker-phone. Jorge said that he and his girlfriend would drive to Fort Worth from San Antonio on February 5 to deliver the cocaine. But on February 5, Jorge called and said that he and his girlfriend were stopping in Austin overnight.

On February 6, Jorge told the informant that he was stopped at a Denny's in Fort Worth in a gray minivan with his girlfriend. A police surveillance team, including Officer Cedillo and the informant, positioned themselves near the Denny's. They observed four individuals exit the Denny's and get into the van, and Rodriguez-Martinez then drove the van out of the parking lot. The other three individuals were later identified as Mireya Mendoza (Rodriguez-Martinez's girlfriend), Alberto Mendoza (Mireya Mendoza's brother), and Amanda Olivares (Alberto Mendoza's girlfriend). Officer Lorenzo Edwards, a uniformed police officer, stopped the van, and Rodriguez-Martinez refused to consent to a search. About thirty minutes later, a canine alerted the officers to the driver's door. The officers then searched and found 12 kilograms of cocaine located in hidden compartments throughout

the van. Rodriguez-Martinez was arrested.

During the trial, Officer Cedillo described Jorge's voice as that of a Hispanic male between 30 and 40 years of age. Rodriguez-Martinez, a Hispanic male, was 35 on the day of his arrest. Officer Cedillo also testified that he had "substantial contact and time to listen to [Jorge's] voice" and that Rodriguez-Martinez's voice "sound[ed] similar to the voice that belonged to Jorge on the other end of the cell phone." Over hearsay and Confrontation Clause objections, Officer Cedillo testified that the informant pointed to Rodriguez-Martinez in the Denny's parking lot and said, "[T]hat's Jorge, the guy I've been talking to." After the van was stopped, Officer Cedillo questioned all four individuals about why they were in Fort Worth. Rodriguez-Martinez said that he was there to watch the Super Bowl at his girlfriend's aunt's house, but he did not know the aunt's name or address. Over hearsay and Confrontation Clause objections, Officer Cedillo testified that Mireya Mendoza said that she was in Fort Worth to watch the Super Bowl at her aunt's house. When Officer Cedillo asked Mireya Mendoza for her aunt's address, she said that she was not telling the truth, that she was not sure why they were in Fort Worth, and that Rodriguez-Martinez had asked her to come to Fort Worth. Alberto Mendoza and Olivares both told Officer Cedillo that they had traveled to Fort Worth to attend a religious function in Dallas, but neither could give specific details.

Officer Cedillo also testified that Rodriguez-Martinez made inconsistent statements upon his arrest. Rodriguez-Martinez initially told Officer Cedillo that he owned the van and had paid $5,000 for it, but, after Rodriguez-Martinez was told that cocaine had been found

3

in the van, Rodriguez-Martinez said that Mireya Mendoza owned the van. Rodriguez-Martinez also initially told Officer Cedillo that he was in Fort Worth to watch the Super Bowl at his girlfriend's aunt's house, but later said that they were going to his girlfriend's cousin's house. Officer Cedillo also testified that Alberto Mendoza told him that the van belonged to Rodriguez-Martinez and that Rodriguez-Martinez handed a cell phone to Alberto Mendoza as Officer Edwards was stopping the van.

Rodriguez-Martinez testified that Mireya Mendoza invited him to go to Fort Worth to attend her family's Super Bowl party. He testified that Mireya Mendoza, Alberto Mendoza, and Olivares picked him up from his duplex in San Antonio in a gray minivan at about 9 p.m. on February 5. They started driving north and decided to stop at a motel in Austin that night. Alberto Mendoza registered at the motel and paid cash for two rooms. The next day, the group left Austin at 9 a.m., and Mireya Mendoza drove the van to the Denny's in Fort Worth. Rodriguez-Martinez testified that when the group came out of Denny's, Mireya Mendoza said that her back hurt, so he agreed to drive the van. Rodriguez-Martinez also testified that he did not know that there was cocaine hidden in the van and that he never told Officer Cedillo that he owned the van. He said that Mireya Mendoza owned the van, that he had seen it parked in her garage three or four times, and that he had never driven it before that day. Rodriguez-Martinez also testified that he was not Jorge and did not know the informant. The registered owner of the van, Jesus Rios, testified that he sold the van to Mireya Mendoza and that he does not know Rodriguez-Martinez.

The informant was unavailable to testify at trial, so the district court allowed defense

counsel to question Officer Cedillo about the informant's identity, criminal history, and the Government's favorable treatment of him. Mireya Mendoza, Alberto Mendoza, and Olivares also never testified at trial.

**II**

Rodriguez-Martinez first claims that there was insufficient evidence to sustain his conviction as charged. Rodriguez-Martinez moved for a judgment of acquittal based on insufficiency of the evidence only at the close of the Government's evidence and failed to renew this motion at the conclusion of the presentation of his defense. His claim, therefore, is reviewed for a "manifest miscarriage of justice."[1] "That occurs only where 'the record is devoid of evidence pointing to guilt or contains evidence on a key element of the offense [that is] so tenuous that a conviction would be shocking.'"[2] In making this determination, the evidence "must be considered 'in the light most favorable to the government, giving the government the benefit of all reasonable inferences and credibility choices.'"[3] The Government concedes that the confidential informant's out-of-court identification of Rodriguez-Martinez as the drug source is testimonial hearsay inadmissible under *Crawford*

---

[1]*United States v. Burton*, 324 F.3d 768, 770 (5th Cir. 2003) (quoting *United States v. Galvan*, 949 F.2d 777, 783 (5th Cir. 1991)).

[2]*Id.* (quoting *United States v. McIntosh*, 280 F.3d 479, 483 (5th Cir. 2002) (quoting *United States v. Cathey*, 259 F.3d 365, 368 (5th Cir. 2001) (internal citations omitted; brackets in original))).

[3]*United States v. Ruiz*, 860 F.2d 615, 617 (5th Cir. 1988) (quoting *United States v. Hernandez-Palacios*, 838 F.2d 1346, 1348 (5th Cir. 1988)).

5

*v. Washington*.[4] We conclude, after a complete review of the record, that there was sufficient evidence to support Rodriguez-Martinez's conviction regardless of whether we consider the informant's out-of-court identification. Rodriguez-Martinez, therefore, is not entitled to a judgment of acquittal.

### III

Rodriguez-Martinez next claims that his Confrontation Clause rights were violated when the district court admitted several out-of-court statements made by witnesses who were unavailable to testify at trial. "Alleged violations of the Confrontation Clause are reviewed *de novo*, but are subject to a harmless error analysis."[5]

Rodriguez-Martinez argues that the admission of out-of-court statements made by Mireya Mendoza violated the Confrontation Clause. At trial, Officer Cedillo testified that Mireya Mendoza gave inconsistent statements when he questioned her about why she was in Fort Worth. Rodriguez-Martinez objected, arguing that Mireya Mendoza's out-of-court statements were testimonial hearsay inadmissible under *Crawford*.[6] The district court properly overruled this objection because Mireya Mendoza's inconsistent statements were not admitted for the truth of the matter asserted. There was no Confrontation Clause

---

[4]541 U.S. 36 (2004).

[5]*United States v. Bell*, 367 F.3d 452, 465 (5th Cir. 2004).

[6]541 U.S. 36 (2004).

violation in admitting these statements.[7]

A possible exception to this conclusion is Officer Cedillo's testimony that Mireya Mendoza told him that Rodriguez-Martinez had asked her to come to Fort Worth, as the Government points to no evidence that Mireya Mendoza said anything inconsistent with that assertion. We need not resolve this question because we order a new trial in any event. We also note that it is questionable whether some of the out-of-court statements attributed to Alberto Mendoza were inconsistent, but no issue in that respect has been raised on appeal.

Rodriguez-Martinez next argues that the admission of out-of-court statements made by the confidential informant violated the Confrontation Clause. At trial, Officer Cedillo testified that the confidential informant identified Rodriguez-Martinez as his drug source. Rodriguez-Martinez objected, arguing that the informant's out-of-court identification was testimonial hearsay inadmissible under *Crawford*. The district court overruled the objection on the basis that the statement is not hearsay because it was a statement against interest.[8] The Government concedes that the admission of the informant's out-of-court identification through Officer Cedillo's testimony violated the Confrontation Clause under *Crawford*. The Government contends, however, that this error was harmless.

To determine whether the Confrontation Clause error was harmless, "[t]he correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully

---

[7]*See id.* at 59 n.9 ("The [Confrontation] Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.").

[8]*See* FED. R. EVID. 804(b)(3).

7

realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt."[9] We consider "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."[10]

In this case, the error that occurred was not harmless beyond a reasonable doubt. The informant's out-of-court statement was the only evidence that definitively identified Rodriguez-Martinez as the drug source. Only one other witness, Officer Cedillo, testified that Rodriguez-Martinez "sounded similar" to the drug source. Other circumstantial evidence connects Rodriguez-Martinez to the drug source, but Rodriguez-Martinez presented a "logically possible and not implausible account" for this evidence[11] because it also points to Alberto Mendoza as the drug source. The scales simply do not tip in favor of the Government on the record before us. Since the informant's identification of Rodriguez-Martinez as the drug source was particularly important to the Government's case, we decline to interpret any adverse influence its admission had on the jury as harmless beyond a reasonable doubt. Accordingly, Rodriguez-Martinez is entitled to a new trial.

---

[9]*Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

[10]*Id.*

[11]*See United States v. Schoneberg*, 396 F.3d 1036, 1044 (9th Cir. 2005) ("We cannot conclude that the [Confrontation Clause] error was harmless here, particularly because [the defendant] testified, and gave a logically possible and not implausible account.").

8

\* \* \* \* \*

For the foregoing reasons, we VACATE Rodriguez-Martinez's conviction and REMAND for a new trial.