# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 16-20397

————

United States Court of Appeals
Fif h Circuit

**FILED**
December 15, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

PERENEAL KIZZEE,

Defendant–Appellant.

————

Appeal from the United States District Court
for the Southern District of Texas

————

Before JONES, SMITH, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Defendant–Appellant Pereneal Kizzee was charged with possession of ammunition and firearms by a convicted felon (count one), possession of a controlled substance with intent to deliver (count two), and possession of a firearm during and in relation to a drug trafficking crime (count three). Kizzee pleaded not guilty. At trial, the Government's key witness was Detective Lance Schultz. The prosecutor asked Detective Schultz about questions he posed to a criminal suspect, Carl Brown, during an interrogation. In response to Detective Schultz's questions, Brown inculpated Kizzee for distributing narcotics. But Brown did not otherwise testify, and he was not subject to cross-examination at trial. Kizzee objected based on hearsay and the Confrontation

No. 16-20397

Clause, which the district court overruled. A jury found Kizzee guilty on all three counts. On appeal, Kizzee argues that the prosecutor's questions and Detective Schultz's testimony effectively admitted Brown's out-of-court statements in violation of the Confrontation Clause and the rules on hearsay. Because we find that the prosecutor's questioning of Detective Schultz admitted testimonial hearsay in violation of the Confrontation Clause, we VACATE Kizzee's conviction for counts two and three and REMAND for a new trial.

## I. BACKGROUND

On February 4, 2014, Detective Schultz and his partner, Detective Justin Lehman, were conducting surveillance at 963 Trinity Cut Off Drive in Huntsville, Texas (the "building" or "house").[1] The officers had previously received information suggesting that drugs were being sold at that location, and they were aware that Defendant Kizzee was frequently seen there during the day. During their surveillance, the officers observed Carl Brown arrive at the house, speak with Kizzee on the porch, and depart after two to three minutes. Suspecting that Brown had purchased drugs from Kizzee, the officers contacted Officer Taylor Wilkins and requested he follow Brown in order to develop probable cause and conduct a traffic stop.

Officer Wilkins testified at trial that he stopped Brown after observing a traffic violation. Officer Wilkins ordered Brown to exit the vehicle and requested permission to search his person, which Brown granted. After searching Brown, Officer Wilkins discovered a bag containing 0.54 grams of crack cocaine inside the liner of his cap. Officer Wilkins arrested Brown and transported him to the police department. At the police department, Detective

---

[1] The structure at 963 Trinity Cut Off Drive was approximately 600 or 700 square feet. Although, there were no bedrooms and no kitchen in the structure, it is sometimes referred to as Kizzee's residence or house.

2

Schultz questioned Brown. In response to Detective Schultz's questions, Brown stated that he purchased the narcotics found in his hat from Kizzee, and he had purchased drugs from Kizzee on previous occasions. Although Brown had served as a reliable informant for Schultz in the past, Brown later recanted his statements to Detective Schultz, denied implicating Kizzee, and indicated he did not want to testify.

After Detective Schultz questioned Brown, he obtained a search warrant for the building at 963 Trinity Cut Off Drive. On February 5, 2014, Officer Wilkins executed the search warrant with the assistance of other officers, including Agent Jared Yates. When the officers arrived, Kizzee opened the front door and peeked out of the doorway. Kizzee then shut and locked the door. The officers forced their way into the building within 45 seconds, and they found Kizzee in the bathroom filling the toilet with water from a five-gallon jug. Detective Schultz ordered Kizze to "show me your hands and get on the ground." Kizzee looked at Detective Schultz, but continued to pour water into the toilet bowl until Schultz grabbed Kizzee and arrested him. Kizzee was removed from the house, searched, and placed in the back of a patrol unit.

The officers thoroughly searched the house and surrounding grounds. The officers took apart the plumbing associated with the toilet and searched the pipes, but found no evidence of narcotics. Ultimately, the search yielded less than a gram of crack cocaine, $1,183 in Kizzee's front pockets, two rifles, and ammunition. According to Agent Yates, the search of the house revealed no evidence of crack cocaine use, nothing consistent with drug distribution, and no proof that Kizzee destroyed any evidence. The officers found a clear plastic bag containing 0.2 grams of crack cocaine in the overflow of the bathroom sink. They also found a microwave and several Pyrex dishes and plastic bowls on the bathroom shelves. Detective Schultz testified that a Pyrex dish and two plastic bowls contained a white residue on them, but Jennifer Hass, the Government's

expert witness, testified that no controlled substance was detected on these items. Two .22 caliber rifles were found in the corner of a room in the building. The officers also found several surveillance cameras still wrapped in plastic in the box, and a safe containing a money counter. Two additional rifles were found in a metal shed behind the building. The officers found three mobile phones in the house. One phone contained two missed calls from Brown's phone number, and one outgoing call to Brown's mobile phone. The calls were all made before Brown appeared at Kizzee's house on the day Brown was arrested. The phone also contained a text message warning of Brown's arrest.

Kizzee was arrested and charged with possession of ammunition and firearms by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (count one), possession of a controlled substance with intent to deliver in violation of 21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(C) (count two), and possession of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (count three). Kizzee pleaded not guilty to all three counts.

After unsuccessfully challenging the validity of the search warrant, Kizzee stood trial. During Detective Schultz's testimony for the Government, the prosecutor inquired about Detective Schultz's questioning of Brown:

> Prosecutor: Detective Schultz, did you ask Mr. Brown a series of questions after you arrived at the police department?
>
> [Schultz]: Yes, sir, I did.
>
> Prosecutor: Did you ask Mr. Brown whether or not he obtained the narcotics that were discovered in his hat from Pereneal Kizzee?
>
> [Schultz]: Yes, sir, I did.
>
> Prosecutor: Did you ask him if he obtained the narcotics that were discovered in his hat immediately prior to being stopped?
>
> [Schultz]: Yes, sir.
>
> Prosecutor: Did you ask Mr. Brown whether or not he had seen any additional narcotics at 963 Trinity Cut Off?

No. 16-20397

[Schultz]: Yes.

. . .

Prosecutor: Did you ask him whether or not he obtained drugs from Mr. Kizzee on previous occasions?

[Schultz]: Yes, sir.

Prosecutor: Based on your observations the day before that involved the surveillance at Mr. Kizzee's residence, the stop by Officer Taylor [Wilkins], the discovery of narcotics, and your subsequent interview of Mr. Brown, what did you and Detective Lehman do?

[Schultz]: I was able to obtain a search warrant for 963 Trinity Cut Off.

Defense counsel objected to this line of questioning based on hearsay and the Confrontation Clause, which the district court overruled.

The jury found Kizzee guilty on all three counts. The court sentenced him to 130 months of imprisonment, consisting of 70 months each as to counts one and two, running concurrently, followed by a consecutive term of 60 months as to count three. Kizzee timely filed a notice of appeal.

## II. DISCUSSION

### A.    Confrontation Clause Violation

On appeal, Kizzee argues that Detective Schultz's testimony implicitly introduced Brown's out-of-court statements in violation of the Sixth Amendment Confrontation Clause and hearsay rules.[2] Kizzee properly raised a Confrontation Clause objection, thus preserving his claim of error. *See United States v. Polidore*, 690 F.3d 705, 710 (5th Cir. 2012). This Court "review[s] the alleged violation of the Confrontation Clause de novo, subject to a harmless error analysis." *Id.* (citing *United States v. Bell*, 367 F.3d 452, 465 (5th Cir.

---

[2] The Confrontation Clause and hearsay rules are not coextensive, but they do overlap. *See Crawford v. Washington*, 541 U.S. 36, 51, 53 (2004). This opinion focuses on the Confrontation Clause analysis to the extent it is dispositive.

5

2004)). The Government has the burden of "defeating [a] properly raised Confrontation Clause objection by establishing that its evidence is non-testimonial." *United States v. Duron–Caldera*, 737 F.3d 988, 993 (5th Cir. 2013) (alteration in original) (quoting *United States v. Jackson*, 636 F.3d 687, 695 & n.4 (5th Cir. 2011)).

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause bars the admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had [] a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). The Supreme Court has defined "testimony" as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51 (alteration in original) (citation omitted). But "the Confrontation Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" *Williams v. Illinois*, 132 S. Ct. 2221, 2235 (quoting *Crawford*, 541 U.S. at 59–60 n.9). "Police officers cannot, through their trial testimony, refer to the substance of statements given to them by nontestifying witnesses in the course of their investigation, when those statements inculpate the defendant. When the statement from an out-of-court witness is offered for its truth, constitutional error can arise." *Taylor v. Cain*, 545 F.3d 327, 335 (5th Cir. 2008). We thus examine three issues: first, whether the prosecutor's questioning, combined with Detective Schultz's testimony, introduced a testimonial statement; second, whether the statement was offered for its truth, i.e., to show Kizzee's guilt; and third, whether Brown was unavailable to testify and Kizzee had a prior opportunity to cross examine him.

## 1. Testimonial Statement

We begin our analysis by examining whether the court admitted the testimonial statement of a witness who did not appear at trial. *Crawford*, 541 U.S. at 53–54. "[A] statement is testimonial if its 'primary purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution.'" *Duron–Caldera*, 737 F.3d at 992–93 (quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006)). Brown's statements made to Detective Schultz while under interrogation by law enforcement are unquestionably testimonial hearsay. *See Crawford*, 541 U.S. at 53 (classifying "interrogations by law enforcement" as testimonial hearsay). In *Crawford*, the Court explained that "[s]tatements taken by police officers in the course of interrogations are also testimonial under even a narrow standard." *Crawford*, 541 U.S. at 52; *see also Taylor*, 545 F.3d at 335–36. The Court reinforced this view in *Davis* where it stated that "[t]he product of [police] interrogation, whether reduced to a writing signed by the declarant or embedded in the memory . . . of the interrogating officer, is testimonial." 547 U.S. at 826.

Instead, the Government argues that no statement made by Brown was ever introduced at trial, and Detective Schultz testified only as to his own observations. After objecting to Detective Schultz's testimony regarding Brown's interrogation based on hearsay and the Confrontation Clause, counsel approached the bench to discuss Brown's status as a nontestifying witness. The prosecutor justified his questioning of Schultz by arguing that "hearsay is an out-of-court statement. You are not going to hear this witness utter one single word that Carl Brown replied in response to any of the questions. It can't possibly be hearsay." The Government adopts this argument on appeal, arguing that "[n]o statement made by Brown was offered for its truth;" the only testimonial statements offered to the jury were Detective Schultz's own statements.

7

No. 16-20397

This Court has recognized that police testimony about the content of statements given to them by witnesses are testimonial under *Crawford*; officers cannot refer to the substance of statements made by a nontestifying witness when they inculpate the defendant. *See Taylor*, 545 F.3d at 335; *Favre v. Henderson*, 464 F.2d 359, 362 (5th Cir. 1972). Where an officer's testimony leads "to the clear and logical inference that out-of-court declarants believed and said that [the defendant] was guilty of the crime charged," Confrontation Clause protections are triggered. *Favre*, 464 F.2d at 364. In *Favre*, we reasoned that "[a]lthough the officer never testified to the exact statements made to him by the informers, the nature of the statements . . . was readily inferred." *Id.* at 362. Officer testimony regarding statements made by witnesses is thus inadmissible where it allows a jury to reasonably infer the defendant's guilt. Similarly, a prosecutor's questioning may introduce a testimonial statement by a nontestifying witness, thus implicating the Confrontation Clause. *See United States v. Johnston*, 127 F.3d 380, 393–95. (5th Cir. 1997); *Favre*, 464 F.2d at 364; *c.f. Gochicoa v. Johnson*, 118 F.3d 440, 445–46 (5th Cir. 1997), *cert denied*, 522 U.S. 1121 (1998). This is true where "the jury would reasonably infer that information obtained in an out of court conversation between a testifying police officer and an informant . . . implicated a defendant in narcotics activity." *Johnston*, 127 F.3d at 395.

Here, Detective Schultz's testimony introduced Brown's out-of-court testimonial statements by implication. At trial, the prosecutor asked Detective Schultz the specific questions he posed to Brown, and the content of this testimony implicitly revealed Brown's statements. *See Taylor*, 545 F.3d at 336. Officer testimony that allows a fact-finder to infer the statements made to him—even without revealing the content of those statements—is hearsay if "offered to establish identification, guilt, or both." *Favre*, 464 F.2d at 362. The prosecutor's questions explicitly identified Kizzee by name, linking him to the

8

substance of Brown's interrogation. In fact, the prosecutor's questions appeared designed to elicit hearsay testimony without directly introducing Brown's statements. Brown's statements were testimonial because they were made under interrogation, and the primary purpose of that interrogation was to establish "past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822. Brown identified Kizzee as his drug source. Although the Government did not introduce the exact statements made by Brown's, the nature of his statements was readily inferred.

The Government cites two cases in support of its argument that no statement by Brown was introduced at trial: *United States v. Flores*, 286 F. App'x 206 (5th Cir. 2008); *United States v. Lopez-Moreno*, 420 F.3d 420 (5th Cir. 2005). But these cases are inapposite; they address whether the admission of non-assertive conduct by a nontestifying witness triggered a defendant's Confrontation Clause rights. It is true, as the Government argues, that where the content of a statement is not disclosed, the Confrontation Clause may not be violated. *See United States v. Castro–Fonseca*, 2011 WL 1549213 (5th Cir. Feb. 1, 2011); *Foy v. Donnelly*, 959 F.2d 1307, 1312–13 (5th Cir. 1992). The Sixth Amendment protection is not triggered where the content of out-of-court statements is not revealed, and the statements at issue do not imply a defendant's guilt. *See Castro–Fonseca*, 2011 WL 1549213, at \*2; *Foy*, 959 F.2d at 1313. But in this case, Detective Schultz's testimony conveyed critical substance about Brown's statements, inculpating Kizzee by name and implying his guilt in the crime charged.

The Government's argument also disregards the fact that a prosecutor's questions may trigger the Confrontation Clause by revealing to the jury that a nontestifying witness conveyed incriminating information. *See Johnston*, 127 F.3d at 394. The question in this case is not whether Detective Schultz explicitly introduced Brown's out-of-court statements, but whether Brown's

out-of-court statements were readily inferred from Detective Schultz's testimony. *See, e.g., Taylor*, 545 F.3d at 336; *United States v. Rodriguez-Martinez*, 480 F.3d 303, 308 (5th Cir. 2007); *Favre*, 464 F.2d at 362. This approach is consistent with the law of other circuits. *See United States v. Meises*, 645 F.3d 5, 21 (1st Cir. 2011) ("If what the jury hears is, in substance, an untested, out-of-court accusation against the defendant, particularly if the inculpatory statement is made to law enforcement authorities, the defendant's Sixth Amendment right to confront the declarant is triggered."); *Ocampo v. Vail*, 649 F.3d 1098, 1108 (9th Cir. 2011) ("[I]n-court descriptions of out-of-court statements . . . are 'statements' and can violate the Confrontation Clause, if the requisite requirements are otherwise met."); *Ryan v. Miller*, 303 F.3d 231, 249 (2d Cir. 2002) ("If the substance of the prohibited testimony is evident even though it was not introduced in the prohibited form, the testimony is still inadmissible."); *Mason v. Scully*, 16 F.3d 38, 43 (2d Cir. 1994) ("The fact that the content of [the co-conspirator's] statement to [the detective] was not revealed in detail was immaterial, for the plain implication that the prosecutor sought to elicit . . . was that the conversation . . . led the police to focus on [the defendant].").

The content of Brown's statements could be readily inferred from the prosecutor's questions and Detective Schultz's testimony. Detective Schultz's testimony revealed the substance of Brown's statements inculpating Kizzee, leading to the clear and logical inference that Brown believed and said that Kizzee was the source of his drugs. Thus, the prosecutor's questioning of Detective Schultz introduced testimonial statement for purposes of the Confrontation Clause.

### 2. *Statement Offered for its Truth*

Next, we consider whether Brown's statements introduced at trial through Detective Schultz's testimony were offered for their truth: to prove

Kizzee's guilt in the crime charged. The Confrontation Clause does not apply to out-of-court statements offered into evidence for a purpose other than establishing the truth of the matter asserted. *See Williams*, 132 S. Ct. at 2235; *Crawford*, 541 U.S. at 59 n.9 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)); *Taylor*, 545 F.3d at 335.

The Government argues that Schultz's statements were limited to his own knowledge and actions, and they explained the basis for obtaining a warrant. According to the Government, Detective Schultz is permitted to testify about what he saw, what happened to Brown on February 4, and Schultz's actions based on what he learned from Brown and other sources. The Government characterizes Detective Schultz's testimony as follows:

> The substance of Schultz's testimony was that he saw Brown arrive at Kizzee's, buy drugs, and then leave. Immediately after that, Brown was arrested and found in possession of drugs. Schultz and Lehman obtained a search warrant and found drugs, drug paraphernalia, ammunition, firearms at Kizzee's house the next day. This is what Schultz saw and heard on February 4 and 5, rather than inadmissible hearsay.

Thus, according to the Government, Brown's statements were not offered to show Kizzee's guilt, but for a constitutionally permissible, nonhearsay purpose. Kizzee argues that a reasonable jury could only have understood Schultz's testimony to communicate that Brown identified Kizzee as his drug source. Because the prosecutor's implicit statements suggested Kizzee's guilt and were not necessary to explain Schultz's actions, we find that Detective Schultz's testimony introduced Brown's statements for their truth.

Testifying officers may provide context for their investigation or explain "background" facts. *See United States v. Smith*, 822 F.3d 755, 761 (5th Cir. 2016). Such out-of-court statements are not offered for the truth of the matter asserted therein, but instead for another purpose: to explain the officer's actions. *See Castro–Fonseca*, 2011 WL 1549213, at \*2; *United States v. Carrillo*,

20 F.3d 617, 619 (5th Cir. 1994). These statements often provide necessary context where a defendant challenges the adequacy of an investigation. But absent such claims, there is a questionable need for presenting out-of-court statements because the additional context is often unnecessary, and such statements can be highly prejudicial. *See* 2 McCormick on Evidence § 249 (7th ed. 2013) (citation omitted) ("The need for this evidence is slight, and the likelihood of misuse great."). Statements exceeding the limited need to explain an officer's actions can violate the Sixth Amendment—where a nontestifying witness specifically links a defendant to the crime, testimony becomes inadmissible hearsay. *See Taylor*, 545 F.3d at 335; *Johnston*, 127 F.3d at 394 ("The more directly an out-of-court statement implicates the defendant, the greater the danger of prejudice."); *United States v. Evans*, 950 F.2d 187, 191 (5th Cir. 1991); *United States v. Hernandez*, 750 F.2d 1256, 1257 (5th Cir. 1985); *United States v. Gomez*, 529 F.2d 412, 416-17 (5th Cir. 1976); *see also United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004). Questions by prosecutors can also trigger Confrontation Clause violations. *See Johnston*, 127 F.3d at 402–03; *Favre*, 464 F.2d at 362–64; *Meises*, 645 F.3d at 21–23. A prosecutor may violate the Confrontation Clause by introducing an out-of-court statement, even indirectly, if offered for its truth by suggesting a defendant's guilt. *See Johnston*, 127 F.3d at 394–95. In *Hernandez*, 750 F.2d at 1257–58.

In this case, the prosecutor's questions and Detective Schultz's subsequent testimony exceeded the scope required to explain Detective Schultz's actions. Detective Schultz's testimony left the jury with the impression that Brown's statements were instrumental in obtaining a search warrant. While Detective Schultz no doubt observed this interrogation, his observations cannot serve as a justification to circumvent constitutional protections; testimony introducing out-of-court statements by a nontestifying

witness can result in a violation of the Confrontation Clause.[3] Admitting testimony regarding Brown's interrogation was not necessary to explain Detective Schultz's actions; there was minimal need for Detective Schultz to explain the details forming the basis of the search warrant. Detective Schultz could have merely explained that he obtained a warrant to search Kizzee's property following Brown's arrest. In fact, the Government's characterization of Detective Schultz's testimony on appeal does just this, omitting that the prosecutor questions Detective Schultz regarding Brown's interrogation.

Detective Schultz's testimony was not limited to merely explaining his actions; it showed that Brown bought drugs from Kizzee, and Kizzee had more at the house. Testimony regarding questions posed to Brown was not necessary. Other circumstantial evidence and Detective Schultz's observations would have been sufficient to explain his investigatory actions and provide background information. Thus, Brown's out-of-court statements inculpating Kizzee were introduced for their truth—to show Kizzee's guilt in the crime charged.

### 3. Unavailable Witness and Prior Opportunity to Cross-Examine

Even if a testimonial statement is admitted against a defendant at a criminal trial, the Sixth Amendment is not violated if both the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine him or her. *Crawford*, 541 U.S. at 53–54. The Government suggests that Kizzee had an opportunity to cross-examine Brown because he could have

---

[3] In support of its argument, the Government offers two cases holding that law enforcement officers may testify about their own observations. *See United States v. Potwin*, 136 F. App'x 609 (5th Cir. 2005); *United States v. Gauthier*, 2001 WL 85819 (5th Cir. Jan. 15, 2001). These cases are inapposite; neither involves law enforcement officer testimony regarding the substance of statements made in the course of interrogation. *See Potwin*, 136 F. App'x at 611; *Gauthier*, 2001 WL 85819, at *1. In this case, Detective Schultz questioned Brown, and Brown provided answers in the form of statements, implicating Kizzee.

called him as a witness by subpoenaing him. The Government argues that it offered to stay the trial while he did so, but Kizzee refused. Thus, according to the Government, Kizzee had a prior opportunity to cross-examine Brown. The Government also repeatedly suggests that cross-examining Detective Schultz was sufficient because this case does not involve statements by out-of-court declarants; Schultz was a witness against Kizzee, he was present at trial, and he was subject to cross-examination. On the other hand, Kizzee argues that Brown's statements were admitted at trial, and he questions Brown's credibility as a witness. He further contends that it should not be incumbent on the defense to produce witnesses for the Government; to suggest otherwise misunderstands the burden of proof in a criminal case.

We agree. The fact that a defendant *could* call a witness cannot fairly constitute a prior opportunity to cross-examine that witness. Otherwise, a prosecutor could introduce hearsay statements by *any* available witness merely by proposing that the defense could call them instead. Even if Kizzee had a prior opportunity to examine Brown, Brown was not unavailable as defined by the Federal Rules of Evidence. *See* Fed. R. Evid. 804(a) (listing criteria for being unavailable as a witness). In fact, the Government concedes that "Brown was not unavailable as a witness. The United States had subpoenaed Brown, but elected not to call him." The Government did not offer any reason why it did not elect to call Brown as a witness, only that it was "not interested in having [Brown]." Finally, a police officer's testimony is no substitute for a nontestifying declarant and does not cure a Sixth Amendment violation. *See Davis*, 547 U.S. at 826; *Ocampo*, 649 F.3d at 1113. Thus, we find that Kizzee's Sixth Amendment right to confront adverse witnesses at trial was violated by Detective Schultz's testimony when the prosecutor implicitly introduced Brown's out-of-court statements.

No. 16-20397

## B.    Harmless Error

Kizzee argues that the error in admitting Brown's statements in violation of the Confrontation Clause and hearsay rules was not harmless. According to Kizzee, he was not permitted to cross-examine Brown about his out-of-court statements, which were critical to the Government's case. Kizzee similarly questions the reliability of Brown as a witness. Kizzee also argues that no other witness in this case could provide testimony from personal knowledge about Kizzee's drug sales. The Government only argues that Kizzee cannot show that the admission of hearsay affected his substantial rights.

Confrontation Clause violations and errors in the admission of hearsay evidence are subject to review for harmless error. *Polidore*, 690 F.3d at 710; *United States v. El-Mezain*, 664 F.3d 467, 494 (5th Cir. 2011). A defendant deprived of the right to confront adverse witnesses is entitled to a new trial unless the Government proves harmless error beyond a reasonable doubt. *Duron–Caldera*, 737 F.3d at 996; *Rodriguez-Martinez*, 480 F.3d at 308. Harmless error means that "there is [no] reasonable possibility that the evidence complained of might have contributed to the conviction." *Chapman v. California*, 386 U.S. 18, 24 (1967). We find that the Government failed to show that the statements did not contribute to Kizzee's conviction beyond a reasonable doubt.[4] This Court considers five factors when evaluating whether an error was harmless: (1) "the importance of the witness' testimony in the prosecution's case," (2) "whether the testimony was cumulative," (3) "the

---

[4] Kizzee was convicted of three counts: possession of ammunition and firearms by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (count one), possession of a controlled substance with intent to deliver in violation of 21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(C) (count two), and possession of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (count three). The testimonial statements at issue in this case pertained to Kizzee's role in distributing a controlled substance, implicating counts two and three. The statements were not relevant to count one. Kizzee's conviction for possession of ammunition and firearms by a convicted felon is thus undisturbed by our ruling.

presence or absence of evidence corroborating or contradicting the testimony of the witness on material points," (4) "the extent of cross-examination otherwise permitted," and (5) "the overall strength of the prosecution's case." *Duron–Caldera*, 737 F.3d at 996 (citations omitted).

The Government referenced Detective Schultz's testimony and Brown's interrogation in its closing statement. The importance of testimony to the prosecution's case can be underscored if it is referenced in closing statements. *United States v. Alvarado-Valdez*, 521 F.3d 337, 342–43 (5th Cir. 2008) ("Our task would be difficult were it not for the government's insistent reliance on the testimony in its closing argument, in light of which we cannot say the error was harmless."). Brown's statements also secured a search warrant for Kizzee's property. And they were crucial to establishing that Kizzee intended to sell or distribute the 0.2 grams of crack found in the house. With evidence that Brown obtained the drugs from Kizzee, the Government could establish Kizzee as a drug dealer rather than possessor. No other testimony was presented to connect Kizzee to Brown as the source of Brown's drugs. *See Rodriguez-Martinez*, 480 F.3d at 308 (finding harmful error where an informant's out-of-court statement was the only evidence definitively identifying defendant as the drug source). And Brown was not presented as a witness at trial; Kizzee did not have a prior opportunity to cross-examine a key witness for the Government whose testimony was vital to the Government's case. Yet Brown was available as a witness; the Government subpoenaed Brown, but did not offer any reason for not electing to call him.

While other circumstantial evidence implicated Kizzee and corroborated Brown's out-of-court statements, we find this evidence is insufficient to show harmless error beyond a reasonable doubt. Detective Schultz testified that the Kizzee's property was known for drug transactions, and he regularly saw drug traffickers at the address in question. He also observed Brown briefly speak to

Kizzee at the address, and he identified their interaction as a drug transaction based on his experience. After stopping and searching Brown, another officer found Brown to be in possession of crack cocaine. Schultz also testified that Kizzee was present at the house, and cell-phone logs linked Kizzee to Brown. Kizzee was found with $1,183 in his front pockets. Officers also found guns and ammunition in the house, as well as apparently new surveillance cameras. But other evidence on the record contradicts Brown's statements. Only 0.2 grams were found in the house, less than the 0.54 grams found on Brown's person. Dishes found in the house had no evidence of any controlled substance when tested. And other officers testified that nothing was found in Kizzee's house that was consistent with using or distributing narcotics. There was also no evidence recovered to indicate that Kizzee destroyed any evidence in the house. This circumstantial evidence offered by the Government is inconclusive at best, and the prejudice caused by the prosecutor's improper questioning is more likely to have contributed to Kizzee's conviction. Thus, the Government's has not shown beyond a reasonable doubt that the admission of Brown's statements was harmless error.

As Kizzee argues, no other witness in this case could provide testimony from personal knowledge that Kizzee sold drugs. Brown's testimony was crucial to establishing Kizzee's guilt. But Kizzee questions Brown's credibility as a witness, and Brown denies ever making the statements attributed to him in the warrant application. The only remaining evidence establishing Kizzee as a drug dealer was circumstantial. And the remaining circumstantial evidence does not appear to be enough to show that "there is [no] reasonable possibility that the evidence complained of might have contributed to the conviction." *Chapman*, 386 U.S. at 24. Thus, we conclude that the violation of Kizzee's Sixth Amendment right was not harmless.

No. 16-20397

## III. CONCLUSION

For the foregoing reasons, we find that the introduction of Brown's out-of-court statements through the prosecutor's questioning of Detective Schultz admitted testimonial hearsay in violation of the Confrontation Clause. As a result, we VACATE Kizzee's conviction for counts two and three and REMAND for a new trial.