# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 26, 2021

Lyle W. Cayce
Clerk

No. 20-60437

United States of America,

*Plaintiff—Appellee*,

*versus*

Dan V. Sharp,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:18-CR-102-1

Before Jones, Southwick, and Costa, *Circuit Judges*.

Gregg Costa, *Circuit Judge*:

Dan Sharp was charged with numerous drug trafficking and gun crimes arising out of three separate incidents. After tangling with two court-appointed attorneys, Sharp proceeded to trial *pro se*. A jury convicted him on fifteen counts. On appeal, Sharp raises procedural, evidentiary, and constitutional challenges to the district court proceedings. Finding no reversible error, we affirm.

No. 20-60437

I.

On September 27, 2017, police officers responded to an apparent suicide at a home in Horn Lake, Mississippi. As officers spoke with the decedent's husband, Dan Sharp, they noticed pill bottles and firearms around the room. This prompted the officers to obtain a search warrant, under which they seized drugs, digital scales, firearms, and ammunition from the home and from Sharp's car parked outside. After confirming that Sharp had felony convictions, officers arrested him.

Sharp had a second run-in with the police the following February, when his car swerved into the lane of a DeSoto County sheriff's deputy. The deputy stopped Sharp's car, and after Sharp admitted that he had a gun inside, retrieved the gun from the center console. At that point, the deputy spotted an open toiletry case on the passenger floorboard containing a clear bag of marijuana. The deputy and a special narcotics officer eventually recovered two more guns, digital scales, and quantities of methamphetamine, cocaine, marijuana, and oxycodone from Sharp's car.

Sharp's final encounter with police occurred on April 19, 2018. That day, a confidential informant told the DeSoto County Sheriff that Sharp had "a large amount of methamphetamine" outside the county courthouse in Hernando, Mississippi. Agents located Sharp's car at the courthouse and began tracking his movements, ultimately observing what they believed to be a drug sale. The agents detained Sharp and again found drugs and drug paraphernalia in his possession.

A grand jury indicted Sharp on nineteen counts stemming from those three incidents: two counts of possessing a firearm as a convicted felon, one count of drug distribution, fourteen counts of possessing drugs with an intent to distribute, and two counts of possessing a firearm in furtherance of a drug trafficking crime. The government subsequently dropped three counts.

No. 20-60437

Before trial, Sharp moved to sever the counts into separate trials for each of the three incidents. His first motion, filed through counsel, argued that Sharp would be prejudiced by having to face in one trial a multitude of charges originating out of the three separate incidents. When the district court denied this motion, Sharp filed a new motion to sever *pro se*, emphasizing that joinder of all counts could hamper his ability to testify on some charges but not others. The district court once again declined to sever the counts. Sharp also moved through counsel to exclude evidence arising out of the February traffic stop and April drug arrest, asserting that police unreasonably detained him on both occasions. The district court denied the suppression motions.

Throughout these pretrial proceedings, Sharp sparred with his court-appointed attorneys. He repeatedly tried to fire his first attorney, a federal public defender, citing poor communication and performance. And he eventually succeeded—noting "a complete breakdown in attorney-client communications," the district court granted the public defender's motion to withdraw. Sharp also clashed with his second court-appointed attorney, who, Sharp complained, refused to file certain motions and cast doubt on his competency by seeking a hearing to assess his fitness for trial. That attorney, meanwhile, filed a motion informing the court that Sharp had made a credible threat of violence against him. The district court found Sharp competent to stand trial and denied Sharp's motions to substitute counsel, observing that he was likely to raise the same complaints "no matter who serves as his counsel."

On the eve of trial, Sharp waived his Sixth Amendment right to counsel and elected to represent himself. The district court held a hearing and "strongly urge[d]" Sharp to stick with his attorney rather than proceed on his own. But Sharp insisted on proceeding *pro se*, so the court accepted his knowing and voluntary waiver and appointed the attorney as Sharp's

standby counsel. As the trial began and the government started offering exhibits, however, Sharp expressed confusion with how to proceed and doubts that he would be "able to carry on with this case." Standby counsel spoke up, suggesting that maybe Sharp wanted to withdraw his counsel waiver while advising the court that he disagreed strongly with certain strategic moves he believed Sharp planned to make. The court twice asked Sharp if he was reconsidering his decision to represent himself, but in response, Sharp only reiterated his confusion as to materials that the government had just presented him. After clarifying what those materials were, the court moved on.

A jury convicted Sharp of fifteen counts and acquitted him of one. On appeal—and with new counsel—Sharp seeks to undo his convictions on a number of grounds.

## II.

We start with the suppression issue. Sharp argues that the district court should have excluded evidence arising out of his February 2018 traffic stop because the DeSoto County sheriff's deputy lacked justification to pull him over. The denial of Sharp's suppression motion is subject to an especially deferential clear-error review because the court found, after taking live witness testimony, that the deputy's account of the traffic stop was "much more credible than Sharp's." *See United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005). The court credited the deputy's testimony that he pulled Sharp over because Sharp "abruptly swerved into his lane, nearly hitting his car," and discounted Sharp's story to the contrary. Sharp has not established that those findings were clearly erroneous. As a result, we affirm the denial of his suppression motion.

III.

Sharp challenges the sufficiency of the evidence supporting his convictions for drug possession with intent to distribute, drug distribution, and firearm possession in furtherance of a drug trafficking offense. Because he moved for a judgment of acquittal, we review his sufficiency claims *de novo*. *United States v. Lee*, 966 F.3d 310, 316 (5th Cir. 2020). Still, "we give great deference to the jury's factfinding role, viewing the evidence and drawing all inferences in favor of its verdict." *Id.* (citation omitted).

The evidence supports Sharp's convictions for drug possession with an intent to distribute. Officers explained that in September 2017, February 2018, and April 2018, they found Sharp with narcotics and in the presence of either drug paraphernalia, firearms, or both. Investigators also described text messages in which Sharp appeared to be negotiating drug sales in the days surrounding his September 2017 and April 2018 arrests. On the stand, Sharp even admitted that he had traded firearms for drugs and that he would offer free drugs to women but would not "get dudes high for free." A rational jury could have therefore concluded that, on each occasion, Sharp knowingly possessed a controlled substance and intended to distribute it.

Sharp disputes that he possessed drugs on September 2017, insisting that he was only briefly visiting the home where they were discovered. But witnesses testified that Sharp was a regular presence in the house and sold drugs out of the bedroom where the drugs were stashed.

Sharp further claims that he never intended to distribute the drugs in his possession. Indeed, some of the quantities he possessed did not rule out personal use. Supporting the jury's finding on intent, however, is that the drugs were always found with digital scales, baggies, or firearms. The presence of these guns and drug distribution materials allowed the jury to infer an intent to distribute even if the quantities were consistent with

personal use. *See United States v. Youngblood*, 576 F. App'x 403, 407 (5th Cir. 2014) (citing *United States v. Kates*, 174 F.3d 580, 582 (5th Cir. 1999)).

Sharp's conviction for drug distribution also stands. The jury heard witness Joseph Warren testify that he had bought cocaine from Sharp in the past and did so again on the date of Sharp's April 2018 drug arrest. That alone is enough.

For the gun convictions that Sharp challenges, the jury had to determine that his possession of firearms in September 2017 and February 2018 "further[ed], advance[d], or help[ed] forward" a drug trafficking offense. *United States v. Cooper*, 979 F.3d 1084, 1090 (5th Cir. 2020) (citing *United States v. Ceballos-Torres*, 215 F.3d 409, 415 (5th Cir. 2000)); *see* 18 U.S.C. § 924(c)(1). The evidence establishes possession. Sharp had several guns in his vehicle when he was pulled over in February 2018. He exercised control over the home where firearms were found in September 2017, handled those firearms shortly before the police arrived on scene, and appeared with those same guns in photos recovered from his cellphone.

Ample evidence also indicates that Sharp possessed those firearms in furtherance of a drug trafficking offense. *See Ceballos-Torres*, 218 F.3d at 414–15 (noting possession is more likely to be in furtherance of a drug trafficking offense if the firearm is accessible to the defendant, stolen, possessed unlawfully, or in proximity to drugs). Sharp's guns were close at hand and in proximity to drugs. He possessed them illegally (due to his prior felony convictions) and one of them had been stolen. The jury therefore heard plenty of evidence to support Sharp's convictions on these counts. *See Cooper*, 979 F.3d at 1090–91 (upholding conviction when firearm found in defendant's car alongside drug paraphernalia); *United States v. Charles*, 469 F.3d 402, 406–07 (5th Cir. 2006) (upholding verdict after noting that

defendant, "as a convicted felon . . . was not permitted to possess any firearm for any purpose").

## IV.

Next, Sharp argues that the district court denied him a fair trial by declining to sever the counts into three separate trials. An indictment may charge the defendant with two or more distinct offenses if the offenses "are of the same or similar character." FED. R. CRIM. P. 8(a). "Joinder of charges is the rule rather than the exception and Rule 8 is construed liberally in favor of initial joinder." *United States v. Huntsberry*, 956 F.3d 270, 287 (5th Cir. 2020) (citation omitted). The court may nonetheless sever joined counts into separate trials "[i]f the joinder of offenses . . . appears to prejudice [the] defendant." FED. R. CRIM. P. 14(a).

We review the denial of a motion to sever "under an exceedingly deferential abuse of discretion standard." *United States v. Hager*, 879 F.3d 550, 557 (5th Cir. 2018) (citation omitted). The district court "will not be reversed without a showing of specific and compelling prejudice which results in an unfair trial." *United States v. Ballis*, 28 F.3d 1399, 1408 (5th Cir. 1994) (citation omitted). The court, moreover, can usually forestall prejudice from the failure to sever counts "through an appropriate jury instruction." *United States v. Turner*, 674 F.3d 420, 430 (5th Cir. 2012).

Sharp has not made a "specific and compelling" showing of prejudice resulting from the failure to sever his counts. Sharp contends that the district court's refusal to sever the counts forced Sharp to make the difficult choice between testifying "on all counts or none." But nowhere does Sharp explain how his defense suffered from his ultimate decision to take the stand. He correctly notes that joinder may prejudice a defendant who "wish[es] to testify in his own defense on one charge but not testify on another." 1A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE &

PROCEDURE § 223 (5th ed. 2020). Yet severance in this scenario "is not mandatory." *Ballis*, 28 F.3d at 1408 (quotation omitted). Sharp does not identify any particular charge about which he was eager to speak or remain silent, so he has not met his "burden of demonstrating that he has both important testimony to give concerning one count and a strong need to refrain from testifying on the other." *Id.* (quotation omitted). Even if he had met that burden, the district court preempted the concerns Sharp raises by limiting cross-examination to "the matters that [Sharp] presented in his narrative testimony." The district court thus acted within its discretion by denying his motion to sever.

V.

A pair of Sharp's claims of trial error face a particularly high hurdle on appeal. Sharp contends that the district court denied him a fair trial by requiring him to wear shackles in sight of the jury. He alternatively seeks a new trial due to the introduction of testimony from DeSoto County Sheriff's Detective Thomas Brea that Sharp claims violated his rights under the Confrontation Clause. Sharp, however, failed to raise these issues in the district court. Because he did not, this court reviews only for plain error— "a clear or obvious forfeited error affecting his substantial rights" that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Davis*, 754 F.3d 278, 281 (5th Cir. 2014); *see id.* (reviewing shackling order for plain error); *United States v. Acosta*, 475 F.3d 677, 680–81 (5th Cir. 2007) (reviewing Confrontation Clause claim for plain error).

A.

Sharp has not shown that the district court erred in ordering him to wear leg shackles, which were padded throughout trial to minimize the noise they would make. Due process "prohibit[s] the use of physical restraints

visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*, 544 U.S. 622, 629 (2005). The district court's concern that a defendant poses a safety risk, however, may be "a valid, particularized reason" for shackling him. *United States v. Ayelotan*, 917 F.3d 394, 401 (5th Cir. 2019); *see also United States v. Maes*, 961 F.3d 366, 376 (5th Cir. 2020) (upholding shackling of defendant who faced a long sentence and "presented a security risk and a flight risk"). And the court "may rely heavily on the U.S. Marshal's advice when deciding whether defendants should be shackled during trial." *Maes*, 961 F.3d at 375 (quotation omitted). Here, the district court identified safety concerns to justify using the padded shackles: Sharp's criminal history, which included battering a juror and assaulting a law enforcement officer; the long sentence he faced; and the Marshal's security concerns. Indeed, Sharp had threatened one of his lawyers before trial in this case. Sharp does not show an error on the shackling issue, let alone one that clears the plain-error hurdles.

B.

Sharp has, by contrast, cleared the first hurdle by showing error in the admission of an informant's out-of-court statement in violation of the Confrontation Clause. *See* U.S. CONST. amend. VI. Detective Brea stated on direct examination that on the day of Sharp's April 2018 arrest, "another agent . . . got a call from a confidential informant saying Mr. Sharp was at [the county courthouse], and he was in possession of a large amount of methamphetamine."

The government argues that it introduced the informant's tip for a nonhearsay purpose: to explain the course of the investigation rather than to assert that the informant's account was true. To be sure, a tip need not be true to "provide context for the[] investigation or explain 'background'

9

facts." *United States v. Kizzee*, 877 F.3d 650, 659 (5th Cir. 2017).  But the mere existence of a purported nonhearsay purpose does not insulate an out-of-court statement from a Confrontation Clause challenge.  *See id.* at 656. The probative value of the nonhearsay purpose of explaining the investigation may pale in comparison to the risk that the jury will consider a highly inculpatory out-of-court statement for its truth.  *Id.* (recognizing this risk).

> Imagine the following testimony in a murder case:
>
> PROSECUTOR:  Why did you start investigating the defendant?
>
> DETECTIVE:     An eyewitness told me that the defendant was the shooter.

Such testimony may, just as the government contends here, "explain why the defendant became a suspect or how the officer was able to obtain a search warrant."  *United States v. Jones*, 930 F.3d 366, 377 (5th Cir. 2019).  But surely such a rationale does not permit an end run around the confrontation right.  The nonhearsay justification fails because, by recounting a "witness's statement to the police that the defendant is guilty of the crime charged," the officer has introduced an intolerably high risk that the jury will take that statement as proof of the defendant's guilt.  *Id.*; *see also Taylor v. Cain*, 545 F.3d 327, 336 (5th Cir. 2008) (recognizing that testimony similar to the hypothetical violated the defendant's confrontation rights).  We thus have recognized that "courts must be vigilant in ensuring that these attempts to 'explain the officer's actions' with out-of-court statements do not allow the backdoor introduction of highly inculpatory statements that the jury may also consider for their truth."  *United States v. Sosa*, 897 F.3d 615, 623 (5th Cir. 2018) (quoting *Kizzee*, 877 F.3d at 659).

Although Sharp's crime was drug dealing rather than murder, Detective Brea's testimony is just as problematic as the hypothetical posed

above.  He relayed an out-of-court statement of the most damaging kind—that Sharp was committing the crime—and left Sharp with no opportunity to confront his accuser.   There was "minimal need" for the detective to share that highly incriminating account, as he could have instead told the jury more generally that a tip prompted him to investigate Sharp.  *See Kizzee*, 877 F.3d at 660; *see also United States v. Sarli*, 913 F.3d 491, 500 (5th Cir. 2019) (Duncan, J., dissenting) (noting the officer "could have explained the circumstances leading to [the defendant's] arrest without divulging the details from the tip").  When, as here, "an officer's testimony leads to the clear and logical inference that out-of-court declarants believed and said that the defendant was guilty of the crime charged, Confrontation Clause protections are triggered."  *Kizzee*, 877 F.3d at 657 (quotation omitted).

Backdooring highly inculpatory hearsay via an explaining-the-investigation rationale is a recurring problem.  *See, e.g.*, *Atkins v. Hooper*, 979 F.3d 1035, 1040–41 (5th Cir. 2020); *Jones*, 930 F.3d at 377–78; *Sarli*, 913 F.3d at 496; *Kizzee*, 877 F.3d at 661; *Taylor*, 545 F.3d at 335.  Statements like those made by Detective Brea threaten to "eviscerate the constitutional right to confront and cross-examine one's accusers."  *United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004).  The government must take care to avoid eliciting this kind of unconstitutional testimony.

Although the jury should not have heard the informant's statement, Sharp cannot establish that the error "affected the outcome of the district court proceedings."  *United States v. Thomas*, 724 F.3d 632, 645 (5th Cir. 2013) (citation omitted).  Overwhelming evidence allowed the jury to find that Sharp distributed drugs and possessed drugs with an intent to distribute them on April 19, 2018.  Detective Brea personally observed Sharp drive to a tattoo parlor that day and engage in what looked like a "hand-to-hand transaction" with Joseph Warren, one of the shop's employees.  Warren himself confirmed Brea's suspicion, testifying that police caught him buying

cocaine from Sharp. And a search of Sharp's vehicle revealed several controlled substances (including cocaine and methamphetamine) as well as drug paraphernalia. The weighty evidence of Sharp's guilt means he is unable to show prejudice from the Confrontation Clause violation.

## VI.

Sharp next contends that the district court violated his constitutional right to counsel by declining to elevate his standby counsel to full trial counsel when the lawyer suggested it. This court reviews *de novo* a defendant's claim that the district court violated his right to counsel "by allowing him to represent himself at trial." *United States v. Joseph*, 333 F.3d 587, 589 (5th Cir. 2003) (citation omitted).

A criminal defendant has a constitutional right to the assistance of counsel. U.S. CONST. amend. VI. But the Sixth Amendment also gives defendants the right to represent themselves. *Faretta v. California*, 422 U.S. 806, 819–20 (1975). Before trial, Sharp elected the latter option, and does not dispute that his original waiver of counsel was a knowing and voluntary one. *See United States v. Davis*, 269 F.3d 514, 518 (5th Cir. 2001) ("In order for a waiver to be knowing and intelligent, the trial judge must warn the defendant against the perils and disadvantages of self-representation.")

A defendant who makes a valid waiver of the right to counsel may reassert the right to an attorney. *See United States v. Pollani*, 146 F.3d 269, 272 (5th Cir. 1998) Absent a finding that reintroduction of counsel would require delay or "impede the orderly administration of justice," a district court cannot deny a *pro se* defendant's motion to be represented by counsel. *United States v. Smith*, 895 F.3d 410, 421 (5th Cir. 2018) (citing *Pollani*, 146 F.3d at 273). This is not a case, however, in which the district court refused to grant a *pro se* defendant's request to retract his counsel waiver. *Cf. Pollani*, 146 F.3d at 272.

No. 20-60437

Sharp expressed confusion over exhibits offered by the government and some doubt that he would be able to go forward without advice from standby counsel. Standby counsel then suggested that perhaps Sharp intended to retract his counsel waiver. In response, the court sought to clarify whether Sharp wished to continue representing himself. It reminded Sharp that he had chosen to represent himself and twice asked him if he wanted to stick to that plan. In answering the court's questions, however, Sharp never reasserted his right to counsel. Because Sharp knowingly waived his counsel right and then declined, after he was given multiple opportunities by the district court, to "withdraw his prior waiver and reassert his right to counsel," the court did not err by allowing him to represent himself. *See United States v. Patterson*, 42 F.3d 246, 248 (5th Cir. 1994). Allowing standby counsel's suggestion that full representation is warranted to override the defendant's stated desire to proceed *pro se* would undermine the right to self-representation.

## VII.

Still dissatisfied by his pretrial representation, Sharp presses an ineffective assistance of counsel claim on appeal. Defendants, however, cannot usually bring ineffective assistance claims on direct appeal. *United States v. Gulley*, 526 F.3d 809, 821 (5th Cir. 2008) (citation omitted). The reason is that typically "the record does not provide sufficient detail about [pre-]trial counsel's conduct and motivations to allow this court to make a fair evaluation of the merits of the defendant's claim." *Id.* (quotation omitted). That is the case here. We thus deny Sharp's ineffective assistance claim without prejudice to his raising the claim on collateral review. *See United States v. Isgar*, 739 F.3d 829, 841 (5th Cir. 2014).

* * *

The judgment is AFFIRMED.

13